**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 3:13-cv-3236-K |
| LUMINANT GENERATION | ) | |
| COMPANY LLC and BIG BROWN | ) | |
| POWER COMPANY | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

---

**MOTION TO STAY**
**BY DEFENDANTS LUMINANT GENERATION COMPANY LLC**
**AND BIG BROWN POWER COMPANY LLC**

---

September 20, 2013

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

**INTRODUCTION** ........................................................................................................1

**PROCEDURAL BACKGROUND** ...............................................................................5

I.      The First NOV and Fifth Circuit Petition for Review ........................................7

II.     The Second NOV and Fifth Circuit Petition for Review ....................................9

III.    The Present Case ...............................................................................................10

**REGULATORY BACKGROUND** .............................................................................11

**LAW GOVERNING MOTIONS TO STAY** .............................................................13

**ARGUMENT** .............................................................................................................14

I.      A Stay of This Case is Necessary in Deference to the First-Filed
        Proceedings in the Fifth Circuit and Will Simplify the Issues to be
        Decided ..............................................................................................................14

II.     A Stay Will Not Prejudice or Disadvantage the Government ...........................20

III.    A Stay Is Proper at This Early Stage of the Case .............................................23

**CONCLUSION** ..........................................................................................................23

**LIST OF EXHIBITS IN APPENDIX** .......................................................................26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alaska Dep't of Envtl. Conservation v. EPA*,
   540 U.S. 461 (2004)..............................................................................................12

*Am. Home Mortg. Serv., Inc. v. Triad Guar. Ins. Corp.*,
   714 F. Supp. 2d 648 (N.D. Tex. 2010) ..............................................................15, 16

*Am. Life Ins. Co. v. Stewart*,
   300 U.S. 203 (1937)..............................................................................................13

*Burger v. Am. Mar. Officers Union*,
   170 F.3d 184 (tbl.), 1999 WL 469962 (5th Cir. Jan. 27, 1999).........................15, 16

*Cadle Co. v. Whataburger of Alice, Inc.*,
   174 F.3d 599 (5th Cir. 1999) ....................................................................5, 15, 17

*Cal. Sec. Co-Op, Inc. v. Multimedia Cablevision, Inc.*,
   897 F. Supp. 316 (E.D. Tex. 1995)......................................................................16

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*,
   630 F. Supp. 2d 295 (S.D.N.Y. 2009).................................................................15

*Cherokee Nation of Okla. v. United States*,
   124 F.3d 1413 (Fed. Cir. 1997).............................................................................13

*Envtl. Integrity Project v. EPA*,
   425 F.3d 992 (D.C. Cir. 2005) ................................................................................6

*ESN, LLC v. Cisco Sys., Inc.*,
   No. 5:08-CV-20, 2008 WL 6722763 (E.D. Tex. Nov. 20, 2008)...........................23

*Friends of the Earth v. Chevron Chem. Co.*,
   900 F. Supp. 67 (E.D. Tex. 1995).......................................................................3, 16

*Giannakos v. M/V Bravo Trader*,
   762 F. 2d 1295 (5th Cir. 1985) .............................................................................19

*Goldstein v. Time Warner N.Y. City Cable Grp.*,
   3 F. Supp. 2d 423 (S.D.N.Y. 1998) .....................................................................15

*Guardian Techs. v. X10 Wireless Tech., Inc.*,
   No. 3:09-cv-649, 2011 WL 308658 (N.D. Tex. Jan. 25, 2011)..............................14

*Hallstrom v. Tillamook Cnty.*,
  493 U.S. 20 (1989)..................................................................................3, 17

*Harrison v. PPG Industries, Inc.*,
  446 U.S. 578 (1980)......................................................................................8

*Hines v. D'Artois*,
  531 F.2d 726 (5th Cir. 1976) ......................................................................13

*Igloo Prods. Corp. v. The Mounties, Inc.*,
  735 F. Supp. 214 (S.D. Tex. 1990) .............................................................16

*Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran)*,
  710 F.2d 199 (5th Cir. 1983) ......................................................................21

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936).....................................................................................13

*In re LJM2 Co-Investment, L.P.*,
  327 B.R. 786 (Bankr. N.D. Tex. 2005)........................................................16

*La. Envtl. Action Network (LEAN) v. City of Baton Rouge*,
  677 F.3d 737 (5th Cir. 2012) .........................................................................3

*Mann Mfg., Inc. v. Hortex*,
  439 F.2d 403 (5th Cir. 1971) ......................................................................15

*Nat'l Coal. of Petroleum Retailers v. EPA*,
  No. 97-1486, 1997 WL 634550 (D.C. Cir. Sept. 25, 1997).......................19

*Nat'l Family Planning & Reproductive Health Ass'n v. Sullivan*,
  No. 92-2177, 1992 WL 345629 (D.D.C. Oct. 5, 1992) ....................... 15, 20

*Needbasedapps, LLC v. Robbins*,
  —F. Supp. 2d—, 2013 WL 656169 (W.D. Tex. Feb. 20, 2013) .............15

*Needbasedapps, LLC v. Robbins Research Int'l, Inc.*,
  —F. Supp. 2d—, 2013 WL 670773 (W.D. Tex. Feb. 20, 2013) .............15

*Pub. Citizen, Inc. v. EPA*,
  343 F.3d 449 (5th Cir. 2003) ........................................................................6

*Riverkeeper, Inc. v. EPA*,
  No. 06 Civ. 12987, 2007 WL 4208757 (S.D.N.Y. Nov. 26, 2007) ........4, 19, 21, 23

*Sackett v. EPA*,
    132 S. Ct. 1367 (2012)................................................................................................8

*Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*,
    614 F. Supp. 2d 772 (E.D. Tex. 2009)......................................................................16

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir.1997) ................................................................................13, 15

*Sierra Club v. EPA*,
    314 F.3d 735 (5th Cir. 2002) ....................................................................................22

*Sierra Club v. Otter Tail Power Co.*,
    615 F.3d 1008 (8th Cir. 2010) ..................................................................................18

*Soverain Software LLC v. Amazon.com, Inc.*,
    356 F. Supp. 2d 660 (E.D. Tex. 2005)..................................................................13, 14

*Sutter Corp. v. P&P Indus., Inc.*,
    125 F.3d 914 (5th Cir. 1997) ..........................................................................14, 15, 16

*Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*,
    815 F. Supp. 994 (E.D. Tex. 1993)....................................................................15, 16

*United States v. AM Gen. Corp.*,
    808 F. Supp. 1353 (N.D. Ind. 1992) ......................................................................2, 16

*United States v. DTE Energy Co.*,
    No. 10-13101, 2011 WL 3706585 (E.D. Mich. Aug. 23, 2011)...............................17

*United States v. DTE Energy Co.*,
    711 F.3d 643 (6th Cir. 2013) ....................................................................................11

*United States v. EME Homer City Generation LP*,
    Nos. 11-4406, -4407, 2013 WL 4437219 (3rd Cir. Aug. 21, 2013) ................................ passim

*United States v. Ethyl Corp.*,
    761 F.2d 1153 (5th Cir. 1985) ..................................................................................18

*United States v. LTV Steel Co., Inc.*,
    116 F. Supp. 2d 624 (W.D. Pa. 2000).....................................................................2, 16

*United States v. Midwest Generation, LLC*,
    720 F.3d 644 (7th Cir. 2013) ................................................................................11, 12

*United States v. Range Prod. Co.*,
   793 F. Supp. 2d 814 (N.D. Tex. 2011) ........................................................................4, 13, 21

*In re U.S. Brass Corp.*,
   173 B.R. 1006 (Bankr. E.D. Tex. 1994) ...............................................................................16

*Wells Fargo Bank, N.A. v. W. Coast Life Ins. Co.*,
   631 F. Supp. 2d 844 (N.D. Tex. 2009) ................................................................................15

*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*,
   751 F.2d 721 (5th Cir. 1985) .........................................................................................15, 16

*Wolf Designs, Inc. v. Donald McEvoy Ltd.*,
   341 F. Supp. 2d 639 (N.D. Tex. 2004) ..........................................................................13, 16

**Statutes**

5 U.S.C. § 552(b)(4) ........................................................................................................................7

18 U.S.C. § 1905 .............................................................................................................................7

42 U.S.C. § 7409(b) ......................................................................................................................22

42 U.S.C. § 7410 ...........................................................................................................................22

42 U.S.C. § 7413(a) ................................................................................................................18, 21

42 U.S.C. § 7413(a)(1) ....................................................................................................2, 9, 17, 21

42 U.S.C. § 7413(b) ......................................................................................................................10

42 U.S.C. § 7475(a) ......................................................................................................................11

42 U.S.C. § 7607(b)(1) ....................................................................................................2, 7, 10, 18

42 U.S.C. § 7607(b)(2) ..................................................................................................................18

42 U.S.C. § 7661a(d) ......................................................................................................................5

42 U.S.C. § 7661d(b)(1) ..................................................................................................................6

**Regulations**

40 C.F.R. § 60.14(e)(1) .................................................................................................................11

30 Tex. Admin. Code § 116.10(1) .................................................................................................12

30 Tex. Admin. Code Chapter 122 ................................................................................6

## INTRODUCTION

Defendants Luminant Generation Company LLC ("Luminant") and Big Brown Power Company LLC ("Big Brown Power") (collectively "Defendants") move to stay this case—which is a lingering part of what is now known as EPA's decades-long "war on coal"[1]—pending the outcome of two closely related cases that have been consolidated and are currently pending before the U.S. Court of Appeals for the Fifth Circuit.[2]  In these two related cases, which involve the same parties as here, the Fifth Circuit has exclusive jurisdiction over threshold issues regarding the U.S. Environmental Protection Agency's ("EPA") Notices of Violations ("NOVs"), which are mandatory predicates to the government's claims in the present case.  The determination of the issues before the Fifth Circuit regarding the NOVs will control whether the present case may proceed at all or instead must be dismissed.  Additionally, the Fifth Circuit case was filed more than a year ago and is well underway.  Accordingly, this Court should stay the present action until the Fifth Circuit issues its final decision.

In the Clean Air Act ("CAA"), Congress divided responsibilities for judicial review of certain matters between the Courts of Appeals and the District Courts.  For example, the Courts of Appeals have *exclusive* jurisdiction to review and set aside "any other final action of the

---

[1] *United States v. EME Homer City Generation LP*, Nos. 11-4406, -4407, 2013 WL 4437219, at *4 (3rd Cir. Aug. 21, 2013).  EPA's complaint in this case is part of its nationwide "enforcement initiative" against the coal-fired power plant industry, which has been described as "the largest, most contentious industry-wide enforcement initiative in EPA history to retroactively target violations of the New Source Review program."  *Id.* (internal citations and quotation omitted).

[2] The Fifth Circuit cases, as noted in the Notice of Related Cases filed by the government (Doc. 7), are *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694 (5th Cir.), and *Big Brown Power Co. LLC et al. v. EPA*, No. 13-60538 (5th Cir.) (consolidated under Order, *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694 (Sept. 3, 2013) (App. at 238)).  Copies of the Petitions for Review in the Fifth Circuit cases and other materials cited in this motion are filed in a separate appendix per Local Rule 7.1(i).  Pinpoint citations to these materials are provided as "App. at ##."

1

[EPA] Administrator under this chapter . . . which is locally or regionally applicable."  42 U.S.C. § 7607(b)(1).  Such review "may take place *only* in the court of appeals" because the statute "divests the district courts of jurisdiction over the [EPA's] decision."  *EME Homer City Generation*, 2013 WL 4437219, at *17 (citing 42 U.S.C. § 7607(b)(2)) (emphasis in original).

Before it filed its complaint in this Court, EPA was required to take such a "final action" by issuing a notice of its findings of violation to Defendants and the State of Texas.[3]  *See* 42 U.S.C. § 7413(a)(1); Doc. 2 ¶¶ 10, 11.  "The notice-of-violation requirement, tracking the federalism-based structure of the rest of the Clean Air Act, affords states the opportunity to take the lead in enforcement by giving the alleged violators an opportunity to negotiate a solution to the violations with their states.  EPA's enforcement authority is a backstop."  *EME Homer City Generation*, 2013 WL 4437219, at *4 n.8.  A legally-sufficient notice that informs the permit holder and the State of EPA's findings is a mandatory prerequisite to EPA's prosecution of those findings in court.  *See, e.g.*, *United States v. AM Gen. Corp.*, 808 F. Supp. 1353, 1362 (N.D. Ind. 1992), *aff'd*, 34 F.3d 472 (7th Cir. 1994) ("Section 113 clearly requires that the EPA must serve . . . a NOV before it may proceed with judicial enforcement proceedings. § 113(a)(1).  The requirement is jurisdictional; the EPA is empowered to bring such a civil suit only on the basis of the specific violation alleged in the NOV . . . ."); *United States v. LTV Steel Co., Inc.*, 116 F. Supp. 2d 624, 632 (W.D. Pa. 2000) ("A jurisdictional prerequisite to the U.S. EPA's filing suit, however, is that it comply with the CAA's notice requirement at 42 U.S.C. Section

---

[3] As discussed below, EPA sent two insufficient NOVs to Luminant and sent incomplete versions of those insufficient NOVs to the State of Texas.  Doc. 2 ¶¶ 10–11 (noting that EPA did not provide to the State of Texas "an appendix [to the NOV] that describes the physical changes to and/or changes in the method of operation of the electric generating units that form the genesis of the noticed CAA violations.").

7413(a)(1).");[4] *see also Friends of the Earth v. Chevron Chem. Co.*, 900 F. Supp. 67, 76 (E.D. Tex. 1995) (holding that pre-suit notice requirement in Clean Water Act is "jurisdictional and mandatory").

Here, in a consolidated proceeding that is well underway, the Fifth Circuit is presently determining the legal sufficiency of the NOVs upon which EPA bases its complaint.  Doc. 2 ¶¶ 10, 11 (citing, as authority for its claims, NOVs issued July 13, 2012, and July 11, 2013).  EPA has issued two NOVs relevant to this case.  The first NOV upon which EPA bases this action was issued in July 2012 and is under review in *Luminant Generation Company LLC et al. v. EPA*, No. 12-60694 (5th Cir.).  The second NOV upon which EPA bases this action was issued in July 2013 and is under review in *Big Brown Power Company LLC et al. v. EPA*, No. 13-60538 (5th Cir.).  The two cases have been consolidated, and the legal status of both NOVs is presently being considered by the Fifth Circuit in the consolidated proceeding.  And, although the parties disagree over the Court of Appeals' exclusive jurisdiction to decide the petitions for review, the Fifth Circuit declined to grant the government's motion to dismiss the case for lack of jurisdiction and instead has carried the issue as part of the merits of the case.[5]  Under the schedule approved by the Fifth Circuit, merits briefing in the consolidated cases will be completed over the next several months.

---

[4] Courts often describe the pre-suit notice requirement in 42 U.S.C. § 7413(a)(1) and similar provisions in other statutes as "jurisdictional," although the Fifth Circuit has suggested that such statutory prerequisites to filing suit are more procedural in nature, not jurisdictional. *La. Envtl. Action Network (LEAN) v. City of Baton Rouge*, 677 F.3d 737, 748 (5th Cir. 2012) (holding that Clean Water Act notice requirement was not jurisdictional).  Regardless, the requirement is mandatory.  *See Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 31 (1989) (holding that statutory pre-suit notice requirements under Resource Conservation and Recovery Act are "mandatory conditions precedent to commencing suit . . . a district court may not disregard these requirements at its discretion").

[5] The parties agreed under a joint proposal for consolidation, approved by the Fifth Circuit on September 3, 2013 (App. at 238), that the question of jurisdiction will be addressed in merits briefing.

It is common practice for District Courts to stay their proceedings in deference to ongoing related proceedings in an appellate court that will decide or inform the issues before them, especially when the District Court proceeding is in its infancy, as here. *See, e.g.*, *United States v. Range Prod. Co.*, 793 F. Supp. 2d 814, 824–25 (N.D. Tex. 2011) (*sua sponte* staying EPA enforcement action in early stage pending Fifth Circuit review of underlying EPA administrative order); Order at 11, *Sierra Club v. Energy Future Holdings Corp. & Luminant Generation Co., LLC*, No. 5:10-cv-156 (Mar. 11, 2011 E.D. Tex.) (App. at 66) ("In the face of a pending Fifth Circuit proceeding that will decide issues important to the disposition of Plaintiff's [Clean Air Act] claim, it would be contrary to traditional notions of judicial economy and efficiency for this Court to go forward on that claim . . . . Discovery has not commenced in this case, and no significant resources have been expended."); Order, *Conservation Law Found., Inc. v. Pub. Serv. Co. of N.H.*, No. 1:11-cv-353 (D.N.H. Sept. 4, 2012) (App. at 68) and Procedural Order and Docket Entry, *Conservation Law Found., Inc.*, No. 1:11-cv-353 (D.N.H. Nov. 2, 2012) (App. at 70) (staying similar Clean Air Act case until "the Court of Appeals for the Sixth Circuit has issued an opinion in *United States v. DTE Energy et al.*, No. 11-2328"); Order, *United States v. Ala. Power Co.*, No. 2:01-cv-152 (N.D. Ala. Jan. 24, 2002) (App. at 75) (staying discovery in similar EPA-filed Clean Air Act case involving alleged violations of Prevention of Significant Deterioration rules in light of Eleventh Circuit case reviewing related EPA compliance order).  Indeed, ***EPA itself has recognized the need for a stay under the exact circumstances presented here***—where there is a dispute between the parties about whether the Court of Appeals or the District Court has exclusive jurisdiction to review EPA's underlying final action.  *See Riverkeeper, Inc. v. EPA*, No. 06 Civ. 12987, 2007 WL 4208757, at *2 (S.D.N.Y. Nov. 26, 2007) (granting EPA motion to stay District Court case where the Court of

Appeals was deciding issue of whether District Court or Court of Appeals had jurisdiction to review EPA's final action—"It makes perfect sense to stay proceedings in this Court pending a ruling by the Fifth Circuit.").

Here, the Fifth Circuit's ruling will resolve the disputed issue of which court has jurisdiction to determine the sufficiency of the NOVs that EPA relies on here and may determine that those NOVs are, as Defendants contend, an inadequate basis for maintaining the present case. These issues must be directed to the Fifth Circuit in the first instance, given that Court's exclusive jurisdiction, *see EME Homer City Generation*, 2013 WL 4437219, at *17, and that the Fifth Circuit proceeding is a first-filed case. *See Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999). Should the Fifth Circuit grant the petitions for review and vacate the NOVs, as Defendants are requesting, then the present case must be dismissed and any proceedings in this Court would have been unnecessary and wasteful. It is thus particularly appropriate and necessary to stay the present case until the Fifth Circuit rules.

## PROCEDURAL BACKGROUND

Luminant is a competitive power generation business in Texas that operates power plants and sells electricity. Luminant is the present operator of the Big Brown Power Plant in Freestone County, Texas, and the Martin Lake Power Plant in Rusk County, Texas. With these plants and others, including gas and nuclear plants, Luminant has over 15,400 megawatts of generation that is dispatched through the Electric Reliability Council of Texas ("ERCOT") to supply electricity to approximately 23 million Texas customers. Big Brown Power Company LLC is the present owner of the Big Brown Power Plant.

At all times relevant to this case, Luminant (or a predecessor company[6]) operated, and continues to operate, the Big Brown and Martin Lake plants under CAA operating permits (called "Title V permits") that were issued by the State of Texas and reviewed and approved by EPA.[7]   Doc. 2 ¶ 61.  Title V permits consolidate all applicable operating requirements for a source into a single document.  *See Pub. Citizen, Inc. v. EPA*, 343 F.3d 449, 453 (5th Cir. 2003).  Compliance with the permit therefore "assure[s] compliance with all emission limitations and other substantive CAA requirements that apply to the source."  *Envtl. Integrity Project v. EPA*, 425 F.3d 992, 993 (D.C. Cir. 2005).[8]

EPA began its investigation of Luminant as part of its industry-wide enforcement initiative in early 2000.  Luminant responded to a number of informal EPA inquiries over the next several years.  In June 2008, despite having previously reviewed and approved of the plants' Title V permits, EPA sent to Luminant the first of several more formal requests for information under the CAA in order, it said, "to obtain information necessary to determine compliance with

---

[6] Most of the maintenance outages at issue in this case (those before October 2007) occurred when a predecessor to Luminant (TXU Generation Company LP) operated the plants. That change is not relevant to the present motion, and thus this motion simply refers to Luminant as the operator of the plants.

[7] Title V permits are required under the CAA, which allows States to issue them under EPA-approved state law. 42 U.S.C. § 7661a(d). Texas is authorized and approved to administer and enforce the Title V permit program in the State. *See* 66 Fed. Reg. 63,318 (Dec. 6, 2001) (EPA approval of Texas's Title V program); *see also Pub. Citizen, Inc.*, 343 F.3d at 463 (upholding EPA's approval of Texas's Title V program). Texas implements the Title V permit requirements through its own regulations. *See* 30 Tex. Admin. Code Chapter 122 (Texas Title V regulations).

[8] EPA reviews Title V permits through "an administrative review process that is reviewable exclusively by the courts of appeals." *EME Homer City Generation*, 2013 WL 4437219, at *17. The statute "establishes a comprehensive system for the EPA's review of Title V applications and proposed permits." *Id.* (citing 42 U.S.C. § 7661d). The State must "submit permit applications and proposed permits to . . . the EPA for review." *Id.* EPA has a duty to object to "any permit [that] contains provisions" that EPA determines to be "not in compliance with" the CAA. 42 U.S.C. § 7661d(b)(1).

the CAA[.]"  *See* EPA Clean Air Act Section 114 Information Request at 1 (June 6, 2008) (App. at 76).   Luminant cooperated with EPA's investigation and, as of October 12, 2012, had provided EPA with "approximately 415,000 pages of information" in response to "multiple requests for information."  Declaration of Steve Thompson at 2 (Oct. 12, 2012) (App. at 101).[9] "[A]t least ten EPA staff engineers and attorneys" participated in EPA's "analyses" of the voluminous information provided to the agency by Luminant.  *Id.*  To date, from 2008 to 2013, Luminant has responded to more than 600 specific formal inquiries from EPA and, since 2000, to numerous other informal inquiries.

## I.    The First NOV and Fifth Circuit Petition for Review

On July 13, 2012, twelve years after starting its investigation, EPA issued to Luminant and its parent corporation, Energy Future Holdings Corp. ("EFH"), a Notice and Finding of Violation ("First NOV").[10]  App. at 4.  In the First NOV, EPA finds that there were violations of the CAA at Big Brown and Martin Lake Power Plants that occurred as far back as 2005. Specifically, EPA found there had been violations of:  1) the CAA's Prevention of Significant Deterioration ("PSD") provisions, 2) Texas's PSD regulations, 3) the CAA's Title V permitting provisions, and 4) Texas's Title V permitting regulations.[11]  First NOV at 1 (App. at 4).  The

---

[9] Subsequently, Luminant has produced additional pages, with the current total number of pages produced standing at over 435,000.  Some of the information submitted by Luminant was confidential business information that is protected from public disclosure by federal statutes. *See, e.g.*, 5 U.S.C. § 552(b)(4); 18 U.S.C. § 1905.  For this reason, the government's complaint, which incorporated some of this confidential business information, was properly filed under seal. Defendants have omitted any confidential business information from this motion to stay.

[10] EFH, although named in EPA's First NOV, neither owns nor operates the plants. Apparently in light of this error, EPA removed EFH as a recipient in the Second NOV.

[11] A State Implementation Plan ("SIP") is the overall body of regulations that govern air emissions in a State.  Its provisions are adopted in the first instance by the State and then approved by EPA.

findings center on discrete maintenance outages to replace certain worn parts at the plants, *see* Doc. 2 ¶ 73, that were conducted between 2005 and 2010.

On September 11, 2012, pursuant to 42 U.S.C. § 7607(b)(1), Luminant and EFH filed with the Fifth Circuit a petition for review of the First NOV.  App. at 23.  On October 12, 2012, EPA moved to dismiss the petition for lack of subject matter jurisdiction and moved the Fifth Circuit to defer its deadline to file the administrative record (the filing of which begins the briefing schedule) until 90 days after its motion to dismiss was decided.  Luminant opposed both motions.  EPA argued that the First NOV was not final action reviewable under the CAA's judicial review provisions, although the government acknowledged this is a question of first impression before the Fifth Circuit.  Luminant responded to the motion to dismiss on November 13, 2012, explaining that EPA's First NOV had all the markings of a final, reviewable action as explained by the Supreme Court in *Sackett v. EPA*, 132 S. Ct. 1367 (2012), and *Harrison v. PPG Industries, Inc.*, 446 U.S. 578 (1980).

The Fifth Circuit granted in part EPA's motion to extend the time to file the administrative record, giving EPA 45 days after the Court's action on its motion to dismiss.  On December 19, 2012, the Fifth Circuit refused to grant EPA's motion to dismiss and ordered that the motion be carried with the case so that the issue would be decided after full briefing and argument on the merits, and the Court's Clerk issued a memorandum clarifying that the administrative record was due on February 4, 2013.  Order, *Luminant Generation Co. LLC et al. v. EPA*, No. 12-60694 (Dec. 19, 2012) (App. at 103).

After seeking an additional extension of time in which to file the administrative record, EPA filed the record for the First NOV on April 1, 2013.  Luminant and EFH filed their opening merits brief in the Fifth Circuit on June 12, 2013, raising certain challenges to the First NOV that

they contend fall within the scope of the Court of Appeals' exclusive jurisdiction, including: 1) that it contained only boilerplate legal conclusions regarding the PSD rules that violate EPA's obligation to provide notice of its findings under 42 U.S.C. § 7413(a)(1); 2) that EPA exceeded its statutory authority by finding violations of the separate Title V program; and 3) that EPA erred when it issued the First NOV to EFH where EPA made no findings that EFH directed the emissions-related activities at the plants. Br. of Pet'rs at 2, *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694 (June 12, 2013) (redacted version) (App. at 119).

## II.     The Second NOV and Fifth Circuit Petition for Review

On July 11, 2013, after Luminant and EFH had filed their opening brief in the Fifth Circuit identifying errors in the First NOV, EPA issued another NOV ("Second NOV"). App. at 15. The Second NOV attempts to avoid repeating some, but not all, of the deficiencies identified by Luminant and EFH in their opening brief to the Fifth Circuit. For example, the Second NOV was issued to Luminant and Big Brown Power, but EPA removed EFH as a recipient. EPA also deleted its findings of Title V violations and findings of violations of certain Texas PSD rules. Yet, like the First NOV, the Second NOV continues to "find" violations of the Clean Air Act's PSD provisions and the PSD rules in the Texas State Implementation Plan ("SIP") for the same maintenance outages. App. at 15. EPA has asserted in correspondence that the Second NOV "supersedes" the First NOV.[12] But EPA has not withdrawn the First NOV and relies on it as a basis for its complaint in the present case. Doc. 2 ¶ 10.

---

[12] Letter from John Blevins, Director, Compliance Assurance & Enforcement Division, EPA Region 6, to Mac MacFarland c/o Stephanie Zapata Moore, Luminant Generation Company, LLC & Big Brown Power Company, LLC (July 29, 2013) (App. at 229).

On July 31, 2013, Defendants Luminant and Big Brown Power filed a petition for review with the Fifth Circuit of the Second NOV, docketed as Case No. 13-60538.  App. at 40.  EPA did not file a motion to dismiss this second petition.

Instead, in light of the relatedness of the two Fifth Circuit proceedings and the Fifth Circuit's prior rulings, EPA and Luminant, Big Brown Power, and EFH agreed to seek consolidation of the two petitions and a unified briefing schedule that includes briefing of the jurisdictional issues disputed by the parties.  On August 21, 2013, the parties filed a Joint Motion to Consolidate and Govern Proceedings.  App. at 231.  The Fifth Circuit granted the joint motion.  Order, *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694 (Sept. 3, 2013) (App. at 238–39).  Review of both NOVs is proceeding under a unified briefing scheduling under which EPA filed a new administrative record on September 6, 2013; Luminant, EFH, and Big Brown Power will file a new opening brief on October 16, 2013; EPA will file its response brief on December 17, 2013; and Luminant, EFH, and Big Brown Power will file their reply brief by January 24, 2014.

## III.   The Present Case

On August 16, 2013, despite the pending challenges under 42 U.S.C. § 7607(b)(1) to the legality of EPA's underlying NOVs in the Fifth Circuit, the government filed the present case in this Court under 42 U.S.C. § 7413(b).  The government alleges in its complaint that its case is predicated on both the First and Second NOVs currently on review before the Fifth Circuit.  Doc. 2 ¶¶ 10, 11.  The complaint alleges, like the findings in the NOVs, that there were violations of the CAA's PSD provisions and the Texas PSD rules at Big Brown and Martin Lake Power Plants when certain worn parts were replaced at the plants during discrete maintenance outages between the years 2005–2009 (Doc. 2 ¶¶ 75–128) and that Luminant should have sought permit

amendments from the State of Texas for the replacements at that time under Texas's Title V rules (*id.* ¶¶ 129–140).  The complaint also alleges that Luminant was obligated to disclose its attorney–client communications as part of EPA's prior investigation leading up to the issuance of the NOVs (*id.* ¶¶ 141–151).

## REGULATORY BACKGROUND

EPA's NOVs and complaint center on the Clean Air Act's Prevention of Significant Deterioration ("PSD") provisions and Texas's PSD rules.  Those provisions contain pre-construction permitting requirements for "major" stationary sources like power plants.  42 U.S.C. § 7475(a).[13]  Under the PSD provisions, "[a]ny 'major emitting facility' **built or substantially modified** after August 7, 1977, in parts of the country subject to the rules about [PSD], needs a permit."  *United States v. Midwest Generation, LLC*, 720 F.3d 644, 645 (7th Cir. 2013) (emphasis added);  *see also United States v. DTE Energy Co.*, 711 F.3d 643, 645 (6th Cir. 2013) (existing facilities "do not have to obtain a permit unless and until they are modified").  PSD is *not* "a program designed to force every source to eventually adopt modern emissions control technology" by characterizing all physical and operational changes as "major" modifications. *DTE Energy Co.*, 711 F.3d at 650–51.  Instead, "the statute and regulations allow sources to replace parts indefinitely without losing their grandfathered status so long as none of those changes cause an emissions increase."[14]  *Id.* at 651.

The PSD rules impose a one-time preconstruction permitting obligation, and do not impose ongoing obligations on a facility.  *See EME Homer City Generation*, 2013 WL 4437219, at *5–6 ("We agree with the unanimous view of the other courts of appeals that" "the PSD

---

[13] As relevant here, a source is a "major" source if it emits more than 100 tons per year of $SO_2$ or $NO_X$. Doc. 2 ¶ 69.

[14] There are other exceptions, such as for routine maintenance, repair, and replacement of parts. 40 C.F.R. § 60.14(e)(1).

program [does not] prohibit operating a facility without BACT or a PSD permit[.]").[15]  Instead,

operating requirements are imposed by a major source's Title V permit, which is renewed every

five years.  *Id*. at *3.  If a source opts not to seek a pre-construction permit at the time it replaces

a part, "[o]nce the [federal five-year] statute of limitations expire[s], [the source operator is]

entitled to proceed as if it possessed all required construction permits."  *Midwest Generation*,

720 F.3d at 648 (applying 28 U.S.C. § 2462 to PSD claims brought by EPA).

In this case, EPA ***does not*** claim that Big Brown or Martin Lake were built or are

presently being operated without or in dereliction of CAA permits or established emission limits.

Indeed, both are existing facilities that have been safely and reliably generating electricity for

years under Title V operating permits issued by Texas and approved by EPA.  *See* Big Brown

Title V Operating Permit Number O65 (App. at 240); Martin Lake Title V Operating Permit

Number O53 (App. at 295).  EPA alleges no violations of the terms of those permits.  Instead,

EPA now asserts in its NOVs and alleges in its complaint that Luminant should have obtained

another permit—a preconstruction permit—when those plants replaced certain discrete pieces of

worn equipment during plant outages between 2005 and 2009.  Doc. 2 ¶¶ 76, 85, 94, 103, 112,

121.  Specifically, according to both EPA's NOVs and its complaint, Luminant should have, at

the time of the outages, applied for PSD pre-construction permits from the State of Texas[16]

before replacing the parts, and should have used, at that time, what the State determined to be

---

[15] "BACT" is "[a]n air pollution control method for a new or modified facility that through experience and research, has proven to be operational, obtainable, and capable of reducing or eliminating emissions from the facility, and is considered technically practical and economically reasonable for the facility." 30 Tex. Admin. Code § 116.10(1).

[16] States are the primary implementers and enforcers of the CAA's PSD provisions by way of their SIPs. *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 491 (2004); *EME Homer City Generation*, 2013 WL 4437219, at *4 n.8. Thus, in Texas and most other States, a facility seeking a PSD permit would apply to the State air agency, not to EPA. *See* First NOV ¶ 11 (App. at 6).

"best available control technology" ("BACT").  *Id.* ¶¶ 81, 90, 99, 108, 117, 126, 130, 136.  The complaint also asserts violations of Title V permitting requirements, claims that are derivative and dependent on the PSD claims.  *See* Order at 6, *United States v. U.S. Steel Corp.*, No. 2:12-cv-304 (N.D. Ind. Aug. 21, 2013) (App. at 357) (dismissing PSD and Title V claims on statute of limitations grounds and holding that "the Title V permit is only deficient in this way *if* U.S. Steel was required to apply for an NSR preconstruction permit in 1990 [*i.e.*, the time of construction]" (emphasis in original)).

## LAW GOVERNING MOTIONS TO STAY

A District Court has the power to stay proceedings incident to its inherent power "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *accord United States v. Range Prod. Co.*, 793 F. Supp. 2d 814, 824–25 (N.D. Tex. 2011); *Soverain Software LLC v. Amazon.com, Inc.*, 356 F. Supp. 2d 660, 662 (E.D. Tex. 2005).  The decision to stay a case is committed to the District Court's discretion.  *See Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 948 (5th Cir.1997); *Wolf Designs, Inc. v. Donald McEvoy Ltd.*, 341 F. Supp. 2d 639, 642 (N.D. Tex. 2004).   In exercising that discretion, the Court "must balance the need for the stay against the countervailing interests," *Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1418 (Fed. Cir. 1997), and fashion an order which is reasonable in scope and duration, *see Hines v. D'Artois*, 531 F.2d 726, 733 (5th Cir. 1976).

It has long been established that "a stay pending the outcome of litigation in another court between the same parties, involving the same or controlling issues, is an appropriate means of avoiding unnecessary waste of judicial resources."  *Wolf Designs*, 341 F. Supp. 2d at 642 (citing *ACF Indus., Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967)); *see also Am. Life Ins. Co. v. Stewart*,

13

300 U.S. 203, 215 (1937) ("In the exercise of a sound discretion [a District Court] may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same.").  In deciding whether to stay a case, courts also consider, among other things: "(1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set."  *Soverain*, 356 F. Supp. 2d at 662; *see also Guardian Techs. v. X10 Wireless Tech., Inc.,* No. 3:09-cv-649, 2011 WL 308658, at *2 (N.D. Tex. Jan. 25, 2011) (applying the three factors).

## ARGUMENT

This is the quintessential example of a case that should be stayed pending the resolution of a related proceeding.  The government's authority to bring and prosecute this case is contingent upon its having issued a valid NOV to Defendants.   The government issued two NOVs before commencing this case. The parties to this case are currently litigating threshold issues regarding the validity of both of those NOVs in consolidated proceedings before the Fifth Circuit and that proceeding is well underway.   The Fifth Circuit's determination of those threshold issues will narrow the scope of this case and may even result in this case's dismissal. When faced with such a situation, District Courts routinely stay their hand pending the outcome of the related proceeding, and the later-filed case is stayed almost as a matter of course.  A stay would preserve the parties' and the Court's limited resources, avoid duplicative proceedings (and the attendant risk of inconsistent decisions), and prejudice neither side.

**I.**     **A Stay of This Case is Necessary in Deference to the First-Filed Proceedings in the Fifth Circuit and Will Simplify the Issues to be Decided**

"Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases

substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999); *accord Sutter Corp. v. P&P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997). The cases need not be identical as long as they "involv[e] the same parties," *Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1993), and there is "overlap on the substantive issues," *Save Power*, 121 F.3d at 950 (quoting *Mann Mfg., Inc. v. Hortex*, 439 F.2d 403, 408 n.6 (5th Cir. 1971)). The rule aims "to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985). Although the first-to-file rule typically applies to cases pending before two federal District Courts, the Fifth Circuit has recognized that "the same policy concerns for avoiding duplicative litigation and comity exist when a similar matter is pending in a federal district court and a federal court of appeals . . . ." *Burger v. Am. Mar. Officers Union*, 170 F.3d 184 (tbl.), 1999 WL 46962, at *1 (5th Cir. Jan. 27, 1999) (per curiam).[17]

In this Circuit, when two parallel cases involve the same parties and raise related issues, the decision to abate the later-filed case in favor of the first-filed case is virtually automatic.[18]

---

[17]   Numerous District Courts have relied on the principles embodied in the first-to-file rule in determining that proceedings before them should be stayed pending the outcome of a related proceeding before a federal courts of appeals. *See supra* pp. 3–4 and cases cited therein; *see also Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 630 F. Supp. 2d 295, 306–07 (S.D.N.Y. 2009) (staying case pending outcome of related proceedings in the Eleventh Circuit); *Goldstein v. Time Warner N.Y. City Cable Grp.*, 3 F. Supp. 2d 423, 437–39 (S.D.N.Y. 1998) (staying case pending outcome of related proceedings in the D.C. Circuit); *Nat'l Family Planning & Reproductive Health Ass'n v. Sullivan*, No. 92-2177, 1992 WL 345629, at *2–3 (D.D.C. Oct. 5, 1992) (staying case pending outcome of related proceedings in the D.C. Circuit).

[18]   *See Cadle*, 174 F.3d at 605–06; *Burger*, 1999 WL 459962, at *2–3; *Sutter*, 125 F.3d at 920; *Save Power*, 121 F.3d at 951–52; *W. Gulf Mar.*, 751 F.2d at 730–32; *Mann Mfg.*, 439 F.2d at 408; *Needbasedapps, LLC v. Robbins*, —F. Supp. 2d—, 2013 WL 656169, at *10–14 (W.D. Tex. Feb. 20, 2013); *Needbasedapps, LLC v. Robbins Research Int'l, Inc.*, —F. Supp. 2d—, 2013 WL 670773 (W.D. Tex. Feb. 20, 2013); *Am. Home Mortg. Serv., Inc. v. Triad Guar. Ins. Corp.*, 714 F. Supp. 2d 648, 651–53 (N.D. Tex. 2010); *Wells Fargo Bank, N.A. v. W. Coast Life*

This is usually accomplished by transferring the later-filed case to the first-filed jurisdiction. *See Sutter*, 125 F.3d at 920.  But where, as here, a transfer is unavailable, the preferred remedy is a stay of the later-filed action. *See, e.g.*, *Am. Home Mortg. Serv.*, 714 F. Supp. 2d 648 at 651–53.[19]

The first-to-file rule plainly dictates that this case should be stayed.  Two consolidated proceedings that are closely related to this case are pending before the Fifth Circuit.  Both were filed before this case was filed (the first NOV proceeding predates this case by more than 13 months).  All parties to the present case are also parties to the proceedings in the Fifth Circuit.  And the issues raised by this case relate directly to the issues being considered in the Fifth Circuit proceedings.  Indeed, the outcome of those proceedings will determine the scope of this case and may result in this case being dismissed or significantly simplified.

The Fifth Circuit proceedings center on a threshold substantive issue that must be decided before this case can move forward—namely, the legal adequacy of the NOVs the government is relying on (and must rely on) to pursue the claims in its complaint.  The government's complaint is predicated on 42 U.S.C. § 7413(a)(1).  *See* Doc. 2 ¶ 63.  Issuance of a valid, legally adequate NOV that meets the requirements of the statute is a mandatory predicate to the government's authority to bring a civil enforcement action.  *See AM Gen. Corp.*, 808 F. Supp. at 1362; *LTV Steel Co.*, 116 F. Supp. 2d at 632; *Friends of the Earth*, 900 F. Supp. at 76.

---

*Ins. Co.*, 631 F. Supp. 2d 844, 846–48 (N.D. Tex. 2009); *Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 782 (E.D. Tex. 2009); *Wolf Designs*, 341 F. Supp. 2d at 642; *Cal. Sec. Co-Op, Inc. v. Multimedia Cablevision, Inc.*, 897 F. Supp. 316, 321 (E.D. Tex. 1995); *Tex. Instruments*, 815 F. Supp. at 997; *Igloo Prods. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 218 (S.D. Tex. 1990); *In re LJM2 Co-Investment, L.P.*, 327 B.R. 786, 790 (Bankr. N.D. Tex. 2005); *In re U.S. Brass Corp.*, 173 B.R. 1006, 1008 (Bankr. E.D. Tex. 1994).

[19]  *See also Burger*, 1999 WL 469962, at *1; *W. Gulf Mar.*, 751 F.2d at 729 n.1; *Sanofi-Aventis*, 614 F. Supp. 2d at 782; *Wolf Designs*, 341 F. Supp. 2d at 646; *Tex. Instruments*, 815 F. Supp. at 999; *supra* note 16 and cases cited therein.

If the Fifth Circuit determines that the NOVs are entirely or partially inadequate, this case will be subject to dismissal in whole or in part.  *See Hallstrom*, 493 U.S. at 31.  If portions of the NOVs are legally insufficient, then the claims that are predicated on the invalid portions must be dismissed—and the scope of the case will narrow—because the underlying NOV defines the boundaries of the government's claims.  *See United States v. DTE Energy Co.*, No. 10-13101, 2011 WL 3706585, at *6 (E.D. Mich. Aug. 23, 2011) ("Plaintiff is barred from pursuing claims not specified in its Notice of Violation.").

Thus, the issues in this case relate directly to issues before the Fifth Circuit.  Under the first-to-file rule, the inquiry ends there: "'[o]nce the likelihood of a substantial overlap between the two suits has been demonstrated, it [is] no longer up to the second filed court to resolve the question of whether both should be allowed to proceed.'"  *Cadle*, 174 F.3d at 605–06 (alterations omitted) (quoting *Mann*, 439 F.2d at 407); *see also* Order at 10–11, *Sierra Club v. Energy Future Holdings Corp. & Luminant Generation Co., LLC*, No. 5:10-cv-156 (E.D. Tex. Mar. 11, 2011) (App. at 65–66) ("a [District Court] case is properly stayed pending the outcome of related litigation [before a Court of Appeals] when issues 'at the heart of' the case will be decided in the [other] pending matter" (quoting *Ass'n of Int'l Auto. Mfrs., Inc. v. Comm'r, Mass. Dep't of Envt'l Prot.*, 196 F.3d 302, 305 (1st Cir. 1999))).  The fact that the Fifth Circuit proceedings involve a substantive issue that is a condition precedent to this case is sufficient by itself to warrant a stay.

But there is an additional reason why the Court should stay this case under first-to-file rule.  The Fifth Circuit proceedings will also address a threshold question about this Court's subject matter jurisdiction: does the Court have jurisdiction to consider whether the NOVs are legally adequate under 42 U.S.C. § 7413(a)(1)?  Jurisdiction under the CAA is an either–or proposition.  The CAA gives the Courts of Appeals exclusive jurisdiction to review certain kinds

of EPA actions under 42 U.S.C. § 7607(b)(1), and it divests the District Courts of jurisdiction over any "[a]ction of the [EPA] Administrator with respect to which review could have been obtained" in a Court of Appeals, *id.* § 7607(b)(2).  In other words, either the Fifth Circuit has jurisdiction to review the legal adequacy of the NOVs as notice to Defendants, or this Court does, but not both.  If issues related to the legal adequacy of the NOVs *can* be raised in the Fifth Circuit under § 7607(b)(1), they *must* be raised there.  On the other hand, if the NOVs are not reviewable under § 7607(b)(1), then Defendants will be entitled to challenge their adequacy here prior to consideration of the merits of the government's claims.

This jurisdictional question is included in the parties' agreed briefing schedule in the Fifth Circuit, *see supra* pp. 9–10, and is a core part of the proceedings in that court.  Defendants contend that the threshold adequacy of the NOVs issued under 42 U.S.C. § 7413(a) come within the reach of § 7607(b)(1) and thus are reviewable "*only* in the court of appeals," *see EME Homer City Generation*, 2013 WL 4437219, at * 17, while the government denies that the Fifth Circuit has jurisdiction to review the NOVs.  *See supra* pp. 7–8.  For present purposes, who has the better of this jurisdictional dispute is immaterial.  What matters is that because of the either–or nature of jurisdiction under the CAA, the Fifth Circuit, in determining its own jurisdiction, will by the same stroke also determine whether this Court has jurisdiction to consider the legal adequacy of the NOVs.  In the absence of a stay, this Court will have to answer that very same jurisdictional question.[20]  Here again, then, there is substantial overlap between the issues in this case and the issues before the Fifth Circuit.

---

[20]  Section "7607(b)(2) limits district court subject matter jurisdiction."  *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1022 (8th Cir. 2010); *accord EME Homer City Generation*, 2013 WL 4437219, at *17; *United States v. Ethyl Corp.*, 761 F.2d 1153, 1155–57 (5th Cir. 1985).  Accordingly, this Court must assure itself that none of the issues in this case involve a challenge to EPA's NOVs that could have been reviewed in the Fifth Circuit under

It is for precisely this reason that EPA itself has previously taken the position that a District Court should enter a stay where "jurisdiction lies either in the district court or in the courts of appeals but not in both courts" and a first-filed proceeding raising the jurisdictional question is pending before a Court of Appeals.  *See Riverkeeper*, 2007 WL 4208757, at *1.  As the court in *Riverkeeper* explained in granting EPA's request for a stay:

> A stay in this Court would enable the Fifth Circuit to consider this important question [of which court has jurisdiction]. Putting aside whether this Court would be bound by a ruling of the Fifth Circuit, there is much to be gained from knowing whether the Fifth Circuit considers itself to have exclusive jurisdiction over a review of the final agency action. If this Court were to charge ahead with all proceedings necessary to bring the case to final judgment and it were later determined that this Court lacked jurisdiction, it may have served to delay a final adjudication in the proper court and would have wasted resources of the parties and the Court.

*Riverkeeper*, 2007 WL 4208757, at *2 (granting EPA's motion for stay pending Fifth Circuit's decision on pending petition for review).  The same reasoning calls for a stay in the present case.

In fact, the case for a stay here is even more compelling than it was in *Riverkeeper* because the Fifth Circuit's decision in the NOV proceedings will be binding on this Court.  In *Riverkeeper*, the two related proceedings were pending in the Southern District of New York and the Fifth Circuit.  Even though the District Court felt there was "much to be gained" from awaiting the Fifth Circuit's decision, *see id.*, in the end the decision was merely persuasive authority.  Here, by contrast, the related proceeding is pending before this Court's home circuit.  The Court will be bound to follow the Fifth Circuit's jurisdictional ruling and any substantive ruling on the validity of the NOVs.  What was a matter of comity and respect for a sister court in

---

§ 7607(b)(1), and it must do so "*sua sponte* if [the issue] is not raised by the parties."  *See Giannakos v. M/V Bravo Trader*, 762 F. 2d 1295, 1297 (5th Cir. 1985) (per curiam); *see also Nat'l Coal. of Petroleum Retailers v. EPA*, No. 97-1486, 1997 WL 634550, at *1 (D.C. Cir. Sept. 25, 1997) (per curiam) (*sua sponte* dismissing a Clean Air Act petition for review due to an absence of jurisdiction under 42 U.S.C. § 7607(b)).

*Riverkeeper* is, in this case, a matter of deference to a court of superior jurisdiction.  "A decision by this Court regarding" the jurisdictional question "could very well interfere with the Court of Appeals' consideration of the issue before it."  *See Nat'l Family Planning & Reprod. Health Ass'n*, 1992 WL 345629, at *3 (staying district-court proceedings pending the outcome of a first-filed appeal in the District Court's home circuit).  Therefore, the Court should stay this case pending the outcome of the Fifth Circuit proceedings.

## II.    A Stay Will Not Prejudice or Disadvantage the Government

Further, a stay of this case, pending the outcome of the pending Fifth Circuit cases, will not prejudice the government or put it at a disadvantage.  There is no threat of any harm to the government's case if this Court grants a stay pending the resolution of the Fifth Circuit cases.

The issue of the adequacy of the NOVs and whether they gave proper notice must be decided at the outset before the substance of EPA's claims here can be litigated; the only question is which court should decide it.  If the Fifth Circuit grants the petitions for review and determines the NOVs not to be adequate, then EPA had no right to file this case in the first instance, and this Court need not expend any resources addressing it (other than to enter a dismissal).  *See* cases cited *supra* pp. 3–4.  If, on the other hand, the Fifth Circuit determines that EPA's NOVs are adequate notice under the statute, EPA may pursue this case and attempt to marshal its evidence and prove the substance of its claims.  And, finally, if the Fifth Circuit determines that jurisdiction to review the adequacy of the NOVs lies with this Court (as the government contends), the issue can then be decided as part of the normal course of proceedings in this case.  There is no procedural disadvantage to EPA in any of these outcomes at the Fifth Circuit.  Indeed, the issue of whether EPA's NOVs are legally sufficient *must* be decided for EPA's claims in this case to proceed—the parties simply disagree on which Court should decide

the issue.  *Cf. Itel Corp. v. M/S Victoria U (Ex Pishtaz Iran)*, 710 F.2d 199, 203 (5th Cir. 1983) (holding that a stay is proper when "pending adjudication in another tribunal . . . has the power to render an effective judgment on issues that are necessary to the disposition of the stayed action."); *see also Range Prod. Co.*, 793 F. Supp. 2d at 824–25 (*sua sponte* staying EPA enforcement action pending Fifth Circuit review of threshold issues).

Given that the issue is further advanced in the Fifth Circuit than here, and the Fifth Circuit has determined to decide the issue on merits briefing that is already underway, principles of judicial economy and coordination weigh in favor of a stay in this Court.  *See Riverkeeper*, 2007 WL 4208757, at *2 ("The prejudice to plaintiffs is minimal because of the advanced state of proceedings in the Fifth Circuit.").  In fact, EPA is more likely to be prejudiced if the Court does *not* enter a stay: allowing "proceedings about enforcement of" an EPA order to go forward "when, some time down the line, the Fifth Circuit may determine that the [order] is not valid" creates a risk that Defendants, "***the federal government***, and the Court will have expended enormous effort and substantial resources for naught."  *Range*, 793 F. Supp. 2d at 824 (emphasis added).

Further, the pace of EPA's actions regarding these matters indicates that a limited stay would not cause prejudice.  EPA began its investigation of Luminant's Big Brown and Martin Lake Power Plants over twelve years ago, as early as 2000.  The maintenance outages that EPA now questions were conducted as many as eight years ago (2005–2009).  But EPA waited years after its investigation began (until 2012) to issue the First NOV and waited yet another year (until 2013) to file this case (even though it could have filed its complaint in August 2012).[21] The significant gaps in time demonstrate that EPA was in no hurry to pursue its claims and did

---

[21] Under 42 U.S.C. § 7413(a), EPA must wait only thirty days after issuing a valid NOV to file a case in District Court.

not consider time to be of the essence.  Indeed, the types of power plant outages at issue here are common in the industry and are familiar to EPA, which has been investigating similar outages at power plants across the country since 1999.  *EME Homer City Generation*, 2013 WL 4437219, at *4.  The significant delay by EPA in bringing its claims against Luminant is strong evidence that a stay would not prejudice or disadvantage the government.  *See* Order at 8–9, *Sierra Club v. Energy Future Holdings Corp. & Luminant Generation Co., LLC*, No. 5:10-cv-156 (App. at 63–64) (finding that the fact that "Plaintiff waited two years beyond the statutory waiting period before filing this lawsuit" weighed in favor of granting a limited twelve-month stay).

Moreover, public health and the environment have at all times been protected, and will continue to be protected, during the Fifth Circuit's review.  During the period after the outages (through the present), the air quality in the areas surrounding both plants have met, and continue to meet, all relevant National Ambient Air Quality Standards ("NAAQS") set by EPA, as EPA has found.[22]  Second NOV ¶ 28 (App. at 19) ("The Plants were located in areas classified as attainment for $NO_X$, $SO_2$, $PM_{2.5}$ and ozone for all relevant periods of this Amended Notice.").  And, although both plants are very large electric generating plants as EPA notes, Doc. 2 ¶¶ 7–8, both plants are operated according to Title V operating permits issued by the State of Texas and approved by EPA.  *Id.* ¶ 61.  These permits contain emission limitations on the very emissions at issue here ($SO_2$ and $NO_X$)—emission limits reviewed and approved by EPA.  App. at 278, 317–22.  EPA claims no violation of these emission limitations either after the outages or now.  Nor does EPA make any factual findings in either NOV to support its conclusory assertions that there

---

[22] NAAQS set the overall quality of the air in the environment to protect human health and the environment with a margin of safety.  *See* 42 U.S.C. § 7409(b); *Sierra Club v. EPA*, 314 F.3d 735, 737 (5th Cir. 2002).  NAAQS are translated by States into limitations on individual sources or groups of sources in order to achieve the overall mandated quality of the ambient air. *See* 42 U.S.C. § 7410; *Sierra Club*, 314 F.3d at 737.

was an increase in emissions as a result of the challenged projects.  App. at 153–59.  Thus, the public and the environment are protected, and were protected, by strict compliance with the NAAQS and the plants' adherence to their Title V permits approved by EPA.  *See EME Homer City Generation*, 2013 WL 4437219, at *17 ("An enforcement proceeding does not relieve the EPA of its obligations under the permitting process." (internal citation and quotation omitted)).

**III.     A Stay Is Proper at This Early Stage of the Case**

Defendants have not yet filed a response to the complaint in this case, and discovery has not yet commenced.  No trial date has been set.  No significant resources have been expended in the present case.  In contrast, the Fifth Circuit cases are well underway, and significant resources have been expended by the parties and Fifth Circuit to further review of the threshold sufficiency of the NOVs in that forum.  *See supra* pp. 3–4.  Therefore, the requested stay of the present case is proper at this time. *See Riverkeeper*, 2007 WL 4208757, at *2 ("It makes perfect sense to stay proceedings in this Court pending a ruling by the Fifth Circuit.  The prejudice to plaintiffs is minimal because of the advanced sate of proceedings in the Fifth Circuit."); c*f. ESN, LLC v. Cisco Sys., Inc.*, No. 5:08-CV-20, 2008 WL 6722763, at *5 (E.D. Tex. Nov. 20, 2008) (finding that "this factor favors granting a stay" when the litigation is in its early stages).

<u>CONCLUSION</u>

For the reasons discussed above, this Court should enter an order staying this action until the Fifth Circuit issues a final decision on the pending petitions for review.

Dated: September 20, 2013                    Respectfully submitted,

**William B. Dawson**
Texas State Bar No. 05606300
**Michael L. Raiff**
Texas State Bar No. 00784803
**Russell H. Falconer**
Texas State Bar No. 24069695
Gibson Dunn & Crutcher LLP
2100 McKinney Avenue
Dallas, Texas 75201
Phone: (214) 698-3132
Fax: (214) 571-2919
Email: wdawson@gibsondunn.com
        mraiff@gibsondunn.com
        rfalconer@gibsondunn.com


/s/ P. Stephen Gidiere III
**P. Stephen Gidiere III**
Texas State Bar No. 24077984
**C. Grady Moore, III**
Alabama State Bar No. ASB8266O74C
**Thomas L. Casey, III**
Alabama State Bar No. ASB5572A27C
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Phone: (205) 251-8100
Fax: (205) 488-5694
Email: sgidiere@balch.com
        tcasey@balch.com


**Daniel Jude Kelly**
Texas State Bar No. 24041229
Associate General Counsel
Energy Future Holdings Corp.
1601 Bryan Street, 43rd Floor
Dallas, Texas 75201
Phone: (214) 812-7182
Fax: (214) 812-6075
Email:
dan.kelly@energyfutureholdings.com

## CERTIFICATE OF CONFERENCE

I hereby certify that, in accordance with Local Rule 7.1, counsel for Defendants, Michael L. Raiff, conferred with counsel for Plaintiff, Bradford McLane and Dimitri Rocha, on September 19, 2013, regarding Defendants' Motion to Stay and that Plaintiff opposes a stay of the case. I certify that the parties were not able to reach agreement on this motion, resulting in an impasse and leaving the issue for the Court to resolve.

/s/ P/ Stephen Gidiere III
Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2013, I electronically filed the foregoing Motion to Stay with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Bradford T. McLane
U.S. Department of Justice
Environment & Natural Resources Division
601 D Street NW
Washington, DC 20004

Dimitri Narciso Rocha
United States Attorney's Office
1100 Commerce Street
Third Floor
Dallas, TX 75242

Anna E. Cross
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611

Elias L. Quinn
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611

/s/ P/ Stephen Gidiere III
Counsel for Defendants

25

## List of Exhibits in Appendix

Notice and Finding of Violation (July 13, 2012) ............................................................................1

Amended Notice and Finding of Violation (July 11, 2013) ...........................................................13

Petition for Review of First Notice and Finding of Violation (Sept. 11, 2012) ...........................23

Petition for Review of Second Notice and Finding of Violation (July 31, 2013) ........................40

Order, *Sierra Club v. Energy Future Holdings Corp. & Luminant Generation Co., LLC*, No. 5:10-cv-156 (Mar. 11, 2011 E.D. Tex.) .........................................................................56

Order, *Conservation Law Found., Inc. v. Pub. Serv. Co. of N.H.*, No. 1:11-cv-353 (D.N.H. Sept. 4, 2012) .................................................................................................................68

Procedural Order and Docket Entry, *Conservation Law Found., Inc. v. Pub. Serv. Co. of N.H.*, No. No. 1:11-cv-353 (D.N.H. Nov. 2, 2012)...........................................................70

Order, *United States v. Ala. Power Co.*, No. 2:01-cv-152 (N.D. Ala. Jan. 24, 2002) .............................................................................................................................................75

EPA Clean Air Act Section 114 Information Request (June 6, 2008).........................................76

Declaration of Steve Thompson (Oct. 12, 2012) .......................................................................100

Order, *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694 (Dec. 19, 2012) ...........................................................................................................................................103

Brief of Petitioners, *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694 (June 12, 2013) (redacted version)................................................................................................104

Letter from John Blevins, Director, Compliance Assurance & Enforcement Division, EPA Region 6, to Mac MacFarland c/o Stephanie Zapata Moore, Luminant Generation Company, LLC & Big Brown Power Company, LLC (July 29, 2013) .........................................................................................................................................229

Parties' Motion to Consolidate and to Govern Further Proceedings, *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694 (Aug. 21, 2013)............................................231

Order, *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694 (Sept. 3, 2013)................238

Big Brown Title V Operating Permit No. O65 ..........................................................................240

Martin Lake Title V Operating Permit No. O53.........................................................................295

Order, *United States v. U.S. Steel Corp.*, No. 2:12-cv-304 (N.D. Ind. Aug. 21, 2013) ...........................................................................................................................................352