**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 3:13-cv-3236-K |
| LUMINANT GENERATION | ) | |
| COMPANY LLC and BIG BROWN | ) | |
| POWER COMPANY | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

---

**BRIEF IN SUPPORT OF MOTION TO DISMISS**
**BY DEFENDANTS LUMINANT GENERATION COMPANY LLC**
**AND BIG BROWN POWER COMPANY LLC**

---

November 22, 2013

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................. iii

**INTRODUCTION** ...........................................................................................................1

**PROCEDURAL BACKGROUND** .................................................................................2

     I.      Luminant's Operation of Big Brown and Martin Lake Power Plants ....................2

     II.     EPA's "Unprecedented" Enforcement Initiative Against Power
             Plants.........................................................................................................................3

     III.     EPA's Notices of Violation and the Tolling Agreement ........................................4

     IV.    The Government's Claims in This Case .................................................................6

**REGULATORY BACKGROUND** .................................................................................7

     I.      The Clean Air Act's Cooperative Federalism Structure ........................................7

     II.     The CAA's Prevention of Significant Deterioration Pre-
             Construction Program ............................................................................................8

     III.     The CAA's Title V Operating Permit Program ...................................................10

**STANDARD OF REVIEW** ...........................................................................................11

**ARGUMENT** ................................................................................................................11

     I.      The Government's Claims in Counts 1–3 and 6 Are Time-Barred
             by 28 U.S.C. § 2462.............................................................................................12

          A.     The PSD claims accrued at the time of construction .................................12

          B.     There is no ongoing or continuing PSD violation .....................................15

     II.     Counts 7 and 8 Fail to State a Claim....................................................................19

     III.     EPA's Failure to Give Pre-Suit Notice to the State of Texas Before
             Commencing this Action Requires Dismissal of Counts 1–8..............................20

**CONCLUSION** ............................................................................................................24

**LIST OF EXHIBITS IN APPENDIX** .........................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Dep't of Envtl. Conservation v. EPA*,
   540 U.S. 461 (2004)................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................11

*BCCA Appeal Grp. v. EPA*,
   355 F.3d 817 (5th Cir. 2003) ................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................................11

*Burnett v. N.Y. Cent. R.R. Co.*,
   380 U.S. 424 (1965)................................................................................................1

*CleanCOALition v. TXU Power*,
   536 F.3d 469 (5th Cir. 2008) ..........................................................2, 8, 13, 17, 19

*Cope v. Anderson*,
   331 U.S. 461 (1947)..............................................................................................15

*Davis v. Dallas Cnty., Tex.*,
   541 F. Supp. 2d 844 (N.D. Tex. 2008) ...............................................................15

*Delhomme v. Caremark Rx, Inc.*,
   232 F.R.D. 573 (N.D. Tex. 2005) ........................................................................11

*Envtl. Integrity Project v. EPA*,
   425 F.3d 992 (D.C. Cir. 2005) ............................................................................10

*Fed. Election Comm'n v. Williams*,
   104 F.3d 237 (9th Cir. 1996) ..............................................................................15

*Friends of the Earth v. Chevron Chem. Co.*,
   900 F. Supp. 67 (E.D. Tex. 1995)........................................................................21

*Gabelli v. S.E.C.*,
   133 S. Ct. 1216 (2013)..............................................................................1, 12, 14

*Hallstrom v. Tillamook Cnty.*,
   493 U.S. 20 (1989)......................................................................................2, 21, 23

*La. Envtl. Action Network (LEAN) v. City of Baton Rouge*,
  677 F.3d 737 (5th Cir. 2012) .........................................................................................21

*Luminant Generation Co., LLC v. EPA*,
  675 F.3d 917 (5th Cir. 2012) ........................................................................................7, 8

*Mann v. Adams Realty Company*,
  556 F.2d 288 (5th Cir. 1977) .........................................................................................11

*Nat'l Parks & Conservation Ass'n, Inc. v. TVA*,
  480 F.3d 410 (6th Cir. 2007) ("*Nat'l Parks (6th Cir.)*")..............................................18

*Nat'l Parks & Conservation Ass'n v. TVA*,
  502 F.3d 1316 (11th Cir. 2007) ("*Nat'l Parks (11th Cir.)*")...........................9, 12, 13, 17, 20

*Nat'l Parks & Conservation Ass'n. v. TVA*,
  No. 3:01-cv-71, 2010 WL 1291335 (E.D. Tenn. Mar. 31, 2010) ..........................................10

*Pub. Citizen, Inc. v. EPA*,
  343 F.3d 449 (5th Cir. 2003) .......................................................................................3, 10

*Reardean v. CitiMortgage, Inc.*,
  No. A-11-CA-420-SS, 2011 WL 3268307 (W.D. Tex. July 25, 2011) ..................................11

*Sierra Club v. Otter Tail Power Co.*,
  615 F.3d 1008 (8th Cir. 2010) ...............................................................12, 13, 16, 17, 18

*Texas v. EPA*,
  690 F.3d 670 (5th Cir. 2012) ...........................................................................................8

*United States v. AM Gen. Corp.*,
  808 F. Supp. 1353 (N.D. Ind. 1992), *aff'd*, 34 F.3d 472 (7th Cir. 1994) ..............................21

*United States v. Cemex, Inc.*,
  864 F. Supp. 2d 1040 (D. Colo. 2012).........................................................................10, 20

*United States v. DTE Energy Co.*,
  711 F.3d 643 (6th Cir. 2013) ...........................................................................................9

*United States v. EME Homer City Generation, L.P.*,
  727 F.3d 274 (3d Cir. 2013)................................................................................... *passim*

*United States v. LTV Steel Co., Inc.*,
  116 F. Supp. 2d 624 (W.D. Pa. 2000).................................................................................21

*United States v. Marine Shale Processors,*
    81 F.3d 1329 (5th Cir. 1996) ...........................................................................18

*United States v. Midwest Generation, LLC,*
    720 F.3d 644 (7th Cir. 2013) .............................................................9, 13, 14, 17

*United Transp. Union v. Fla. E. Coast Ry. Co.,*
    586 F.2d 520 (5th Cir. 1978) ...........................................................................15

*United States v. U.S. Steel Corp.,*
    No. 2:12-cv-304, 2013 WL 4495665 (N.D. Ind. Aug. 21, 2013) ....................15, 20

*Vernon v. City of Dallas,*
    No. 3:08-cv-1068, 2009 WL 2486033 (N.D. Tex. Aug. 13, 2009) ...................14, 23

*Virginia v. Browner,*
    80 F.3d 869 (4th Cir. 1996) ............................................................................10

## Statutes

28 U.S.C. § 2462 .......................................................................................11, 14

42 U.S.C. § 7401(a)(3) ......................................................................................8

42 U.S.C. § 7411(a)(4) ......................................................................................9

42 U.S.C. § 7413(a)(1) ................................................................................12, 21

42 U.S.C. § 7413(b) .........................................................................................23

42 U.S.C. § 7475(a) ......................................................................................8, 16

42 U.S.C. § 7479(2)(C) ...................................................................................8–9

42 U.S.C. § 7661a(d) .......................................................................................10

## Regulatory Materials

40 C.F.R. § 2.301(h)(3) ..................................................................................5, 23

40 C.F.R. § 51.104(a) ........................................................................................7

40 C.F.R. § 52.21(r)(1) .................................................................................16, 18

40 C.F.R. § 60.14(e)(1) .....................................................................................10

66 Fed. Reg. 63,318 (Dec. 6, 2001) ...........................................................................................10

30 Tex. Admin. Code § 116.10(1) ...............................................................................................9

30 Tex. Admin. Code § 116.110 (2001) .............................................................................16, 18

30 Tex. Admin. Code § 116.160 (2001) .............................................................................16, 18

30 Tex. Admin. Code Chapter 122 .............................................................................................10

L.A.C. § 33:III:501.C.2.............................................................................................................18

## INTRODUCTION

Defendants Luminant Generation Company LLC ("Luminant") and Big Brown Power Company LLC ("Big Brown Power") (collectively "Defendants") file this brief in support of their motion to dismiss Counts 1–8 of the government's complaint.  There are three grounds for dismissal.

*First*, Counts 1–3 and 6 are time-barred by the five-year statute of limitations at 28 U.S.C. § 2462.  Statutes of limitations "are primarily designed to assure fairness to defendants" and serve important interests of repose and fairness, particularly in actions by the government seeking penalties.  *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428 (1965); *see also Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1223 (2013) ("[I]t 'would be utterly repugnant to the genius of our laws' if actions for penalties could 'be brought at any distance of time.'" (quoting *Adams v. Woods*, 2 Cranch 336, (1805)).  Here, Counts 1–3 and 6 allege violations of the Clean Air Act's ("CAA") Prevention of Significant Deterioration ("PSD") *pre-construction* permitting requirements.  The "unanimous view of the [] courts of appeals" that have considered the issue is that a PSD claim under the statutory and regulatory PSD provisions invoked by the government's complaint accrues **at the time of construction** and **does not continue**.  *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 284 (3d Cir. 2013).  Because the government waited to file its complaint more than five years *after* the construction activity in Counts 1–3 and 6 is alleged to have occurred, those claims are time-barred.

*Second*, Counts 7 and 8 are tag-along claims to the PSD claims and should be dismissed for failure to state a claim.  Those counts allege deficient permit applications subsequent to the alleged construction activity, but the Clean Air Act does not create a cause of action for submission of an incomplete permit application.  As the Fifth Circuit has said, "an entity can file

as many incomplete permit applications as it so chooses, but that does not mean in doing so, it is violating a preconstruction requirement or an emission standard or limitation." *CleanCOALition v. TXU Power*, 536 F.3d 469, 477–78 (5th Cir. 2008); *see also EME Homer City Generation*, 727 F.3d at 298 (holding that the CAA "omi[ts] . . . any civil cause of action for submitting incomplete applications or operating under a validly issued but incomplete permit.").

***Third***, Counts 1–8 should be dismissed for the additional reason that the U.S. Environmental Protection Agency ("EPA") failed to comply with the mandatory pre-suit notice requirements in 42 U.S.C. § 7413(a)(1) before commencing this action. The government was required by the statute to wait 30 days *after* EPA provides notice of its PSD findings to the State of Texas before filing its complaint. But by its own admission, Doc. 2 ¶¶ 10–11, it failed to do so, and thus these claims must be dismissed. *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26 (1989) (holding that statutory notice requirement is a "mandatory, not optional, *condition precedent* for suit" (emphasis added)).

## PROCEDURAL BACKGROUND

### I.     Luminant's Operation of Big Brown and Martin Lake Power Plants

Luminant is a competitive power generation business in Texas that operates power plants and sells electricity. Luminant is the present operator of the Big Brown Power Plant in Freestone County, Texas, and the present operator and owner of the Martin Lake Power Plant in Rusk County, Texas.[1]  With these plants and others, including natural gas and nuclear plants, Luminant provides over 15,400 megawatts of generation that is dispatched through the Electric Reliability Council of Texas ("ERCOT") to Texas consumers. Together, the Martin Lake and

---

[1] Big Brown Power is the present owner of the Big Brown Power Plant.

Big Brown plants generate enough electricity to power about 1.7 million homes during normal conditions.

The Big Brown Plant is comprised of two units (Units 1 and 2), which began generating electricity in 1971 and 1972. Doc. 2 ¶ 68. The Martin Lake Plant is comprised of three units (Units 1, 2, and 3), which began generating electricity in 1977, 1978, and 1979. *Id*. ¶ 67. At all times relevant to this case, Luminant (or a predecessor company[2]) operated, and continues to operate, the Big Brown and Martin Lake plants pursuant to CAA operating permits (called "Title V permits"[3]) that were issued by the State of Texas and reviewed and approved by EPA.[4] Doc. 2 ¶ 61.

## II.    EPA's "Unprecedented" Enforcement Initiative Against Power Plants

The government's claims against Big Brown and Martin Lake in this case are brought as part of EPA's hotly contested, industry-wide Clean Air Act "enforcement initiative" against power plants that use coal. The initiative started in 1999 when "the EPA rolled out a new enforcement initiative" and announced "what [it] called an 'unprecedented action.'" *See EME Homer City Generation*, 727 F.3d at 281–82. As recently described by the Third Circuit:

> [In 1999, EPA filed] civil enforcement actions against seven electric utility companies and the Tennessee Valley Authority for Clean Air Act violations dating back more than twenty years at thirty-two power plants across ten states. That action was merely the first in what would become "the largest, most contentious industry-wide enforcement initiative in EPA history" to retroactively target violations of the New Source Review program: "[A]ll involve virtually identical allegations. In each case, EPA alleges that the replacement of parts,

---

[2] Most of the maintenance outages at issue in this case (those before October 2007) occurred when a predecessor to Luminant (TXU Generation Company LP) operated the plants.

[3] Title V permits—named for Title V of the Clean Air Act—consolidate all applicable operating requirements for a source into a single document. *See Pub. Citizen, Inc. v. EPA*, 343 F.3d 449, 453 (5th Cir. 2003).

[4] EPA reviews Title V permits through "an administrative review process that is reviewable exclusively by the courts of appeals." *EME Homer City Generation*, 727 F.3d at 296–97.

typically boiler components or portions [of] components, at existing electric generating units amounted to 'major modifications' of those units, triggering new source permitting and regulatory requirements.   According to EPA, failure to obtain preconstruction permits constitutes a continuing violation, rendering ongoing operation of the units unlawful."

*Id*. at 281–82 (quoting and citing Margaret Claiborne Campbell & Angela Jean Levin, *Ten Years of New Source Review Enforcement Litigation*, 24 Natural Res. & Env't 16 (2010)).

## III.   EPA's Notices of Violation and the Tolling Agreement

When EPA's initiative came to Texas, Luminant's predecessor cooperated with EPA's investigation of its plants and responded to a number of informal EPA inquiries over the next several years.   In June 2008, EPA sent to Luminant the first of several formal requests for information and, from 2008 to 2013, Luminant responded to more than 600 specific formal inquiries from EPA and produced over 415,000 pages of documents that EPA requested.   Doc. 13 at 7; Declaration of Steve Thompson, at 2 (Oct. 12, 2012), Case No. 12-60694 (5th Cir.) (App. at 24).[5]

In mid-2012, EPA issued a Notice and Finding of Violation ("NOV") for Big Brown and Martin Lake, the first of two NOVs it would issue.   Doc. 2 ¶¶ 10, 11.   The first NOV was dated July 13, 2012, and was issued to Luminant and its corporate parent, Energy Future Holdings Corp. ("EFH").   *Id*. ¶ 10.   EPA did not immediately sue on the first NOV.   On September 11, 2012, pursuant to 42 U.S.C. § 7607(b), Luminant and EFH filed a timely petition for review of the first NOV with the Fifth Circuit.   *See Luminant Generation Co. LLC, et al. v. EPA*, Case No. 12-60694 (5th Cir.).

Because an NOV does not toll the statute of limitations, the U.S. Department of Justice, Luminant, and EFH executed a tolling agreement for the claims in the first NOV as part of their

---

[5] Copies of materials cited in this motion are filed in a separate appendix per Local Rule 7.1(i). Pinpoint citations to these materials are provided as "App. at ##."

informal discussions.  Tolling Agreement (Jan. 28, 2013) (App. at 26).  The agreement was executed on January 28, 2013—13 days from the five-year anniversary of the outage at Martin Lake Unit 3 that is the subject of Count 5 of the government's complaint.  *Id*.  The tolling agreement applies to alleged violations "as set forth in the July 13, 2012 Notice and Finding of Violations issued by EPA to Luminant"—"the Tolled Claims."  Tolling Agreement at 1 (App. at 26).  Under the Tolling Agreement, "[t]he period commencing on January 14, 2013 and ending on July 31, 2013, inclusive (the 'Tolling Period'), shall not be included in computing the running of any statute of limitation potentially applicable to any action brought by the United States on the Tolled Claims."  *Id*.

After Luminant and EFH filed their opening brief with the Fifth Circuit as to the validity of the first NOV, App. at 29, EPA issued a second NOV on July 11, 2013, to Luminant and Big Brown Power.  Doc. 2 ¶ 11; App. at 13.  Again, Luminant and Big Brown Power filed a timely petition for review with the Fifth Circuit, which was consolidated with the first petition for review on motion by the parties.  App. at 106–07; *see Luminant Generation Co. LLC, et al. v. EPA*, Consolidated Case Nos. 12-60694 & 13-60538 (5th Cir.).  Briefing in the consolidated Fifth Circuit cases is ongoing.

As alleged in the complaint, both NOVs "include[] an appendix that describes the physical changes to and/or changes in the method of operation of the electric generating units that form the genesis of the noticed CAA violations."  *Id*. ¶¶ 10, 11.  However, neither appendix has been provided to the State of Texas due to its confidential status under EPA's regulations.  *Id*.; Doc. 25 at 6–7.  EPA and the State of Texas are presently engaged in an administrative process that will, upon completion, authorize EPA to provide the confidential appendix to the State in accordance with EPA's regulations.  *See* Doc. 25 at 6; 40 C.F.R. § 2.301(h)(3).

## IV.    The Government's Claims in This Case

The government filed the complaint in this case on August 16, 2013, citing both NOVs as support but without providing complete copies of either to the State of Texas.  Doc. 2 ¶¶ 10–11. The complaint includes three types of claims.  First, Counts 1–6 allege that there were violations of the CAA's Prevention of Significant Deterioration ("PSD") preconstruction requirements and the Texas PSD rules when certain parts were replaced at Big Brown and Martin Lake during six maintenance outages between the years 2005–2009, five of which are alleged to have occurred more than five years before the complaint was filed:

| Count | Plant/Unit | Dates of Outage Work |
|:---:|:---:|:---:|
| 1 | Martin Lake Unit 1 | March 4 to April 13, 2006 (Compl. ¶ 76) |
| 2 | Martin Lake Unit 2 | February 16 to April 5, 2007 (Compl. ¶ 85) |
| 3 | Martin Lake Unit 3 | February 26 to April 2, 2005 (Compl. ¶ 94) |
| 4 | Martin Lake Unit 1 | March 1 to April 1, 2009 (Compl. ¶ 103) |
| 5 | Martin Lake Unit 3 | February 10 to April 5, 2008 (Compl. ¶ 112) |
| 6 | Big Brown Unit 2 | October 15 to November 13, 2005 (Compl. ¶ 121) |

According to the complaint, Luminant should have, before each outage, applied for a PSD pre-construction permit from the State of Texas before replacing the parts at issue.  Doc. 2 ¶¶ 81, 90, 99, 108, 117, 126.  The complaint alleges that by "failing to obtain a PSD permit" for the outage

work, "Luminant violated *and continues to violate* Section 165 of the Act, 42 U.S.C. § 7475 [and various PSD rules]." *Id.* ¶¶ 80, 89, 98, 107, 116, 125 (emphasis added).

<u>Second</u>, Counts 7 and 8 allege that "[s]ubsequent[]" to these same replacements, Luminant submitted incomplete Title V operating permit applications to the State of Texas and "thereafter has operated" the units "without having an *adequate* Title V operating permit." *Id.* ¶¶ 131–32, 137–38 (emphasis added). <u>Third</u>, in Count 9, the government challenges Luminant's withholding of attorney–client communications and work product in response to EPA's administrative information requests leading up to the filing of the complaint. *Id.* ¶¶ 141–51.

## REGULATORY BACKGROUND

### I. The Clean Air Act's Cooperative Federalism Structure

The Clean Air Act ("CAA") is an "experiment in cooperative federalism" and "establishes a comprehensive program for controlling and improving the nation's air quality through state and federal regulation." *Luminant Generation Co., LLC v. EPA*, 675 F.3d 917, 921 (5th Cir. 2012) (internal citations and quotations omitted). EPA plays an important but confined role in this regime. The agency's main responsibility is to ensure States adopt an adequate regulatory program for air emissions control. *BCCA Appeal Grp. v. EPA*, 355 F.3d 817, 822 (5th Cir. 2003). Accordingly, EPA issues regulations to implement the CAA, but these regulations generally do not impose obligations directly on regulated entities. Rather, they set standards that a State is expected to apply through its own State Implementation Plan ("SIP"). A SIP is a State-promulgated, EPA-approved body of regulations that governs air emissions in a State. The SIP directly controls the legal obligations of regulated entities and may be revised from time to time by the State. *See Luminant Generation*, 675 F.3d at 921; 40 C.F.R. § 51.104(a).

As a consequence of this statutory design, CAA enforcement is primarily handled by States. The CAA makes clear that "air pollution control at its source is the *primary* responsibility of States and local governments." 42 U.S.C. § 7401(a)(3) (emphasis added); *Luminant Generation Co.*, 675 F.3d at 932 ("[The CAA's] cooperative federalism regime . . . affords sweeping discretion to the states . . . ."); *Texas v. EPA*, 690 F.3d 670, 674 (5th Cir. 2012) ("As designed by Congress, states play a central role in the CAA regulatory structure."). "EPA's enforcement authority," on the other hand, "is a backstop." *EME Homer City Generation*, 727 F.3d at 282 n.8.

## II.     The CAA's Prevention of Significant Deterioration Pre-Construction Program

The government's complaint in this case centers on the CAA's Prevention of Significant Deterioration ("PSD") provisions as implemented by Texas's PSD rules. As with the CAA generally, States are the primary implementers and enforcers of the CAA's PSD provisions by way of their SIPs. *See Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 491 (2004); *CleanCOALition*, 536 F.3d at 472; *EME Homer City Generation*, 727 F.3d at 282 n.8. Thus, in Texas and most other States, a facility seeking a PSD pre-construction permit would apply to the State air agency, not to EPA. *See* 2012 NOV ¶ 11 (App. at 6). In Texas, that agency is the Texas Commission on Environmental Quality ("TCEQ").

The PSD provisions contain *pre-construction* permitting requirements for "major" stationary sources of air emissions like power plants. 42 U.S.C. § 7475(a).[6] The PSD provision relied on by the government's complaint here provides that no major source "*may be constructed*" unless a preconstruction permit has been issued. *Id*. (emphasis added). As used in the PSD program, "construction" includes "the modification" of an existing facility. *Id*. §

---

[6] As relevant here, a source is a "major" source if it emits more than 100 tons per year of $SO_2$ or $NO_X$. Doc. 2 ¶ 69.

7479(2)(C); *see also United States v. Midwest Generation, LLC*, 720 F.3d 644, 645 (7th Cir. 2013) ("Any 'major emitting facility' built or substantially modified after August 7, 1977, in parts of the country subject to the rules about [PSD], needs a permit."); *see also United States v. DTE Energy Co.*, 711 F.3d 643, 645 (6th Cir. 2013) (existing facilities "do not have to obtain a permit unless and until they are modified"). "Modification" is further defined by the statute. *See* 42 U.S.C. § 7411(a)(4).

The PSD permitting requirement is a one-time obligation that arises at the time of **construction**, and the statute does not impose ongoing PSD obligations with respect to the **operation** of a facility.[7] *Nat'l Parks & Conservation Ass'n v. TVA*, 502 F.3d 1316, 1322–23 (11th Cir. 2007) ("*Nat'l Parks (11th Cir.)*") ("[V]iolations of the preconstruction permitting requirements occur at the time of construction, not on a continuing basis."); *EME Homer City Generation*, 727 F.3d at 284 ("We agree with the unanimous view of the other courts of appeals that" "the PSD program [does not] prohibit operating a facility without BACT or a PSD permit[.]"). Instead, operating requirements are imposed by a facility's Title V permit, which is periodically renewed and revised. *EME Homer City Generation*, 727 F.3d at 297–99.

PSD is *not* "a program designed to force every source to eventually adopt modern emissions control technology" by characterizing all physical and operational changes as "major modifications." *DTE Energy Co.*, 711 F.3d at 650–51. Instead, "the statute and regulations allow sources to replace parts indefinitely without losing their grandfathered status so long as none of those changes cause an emissions increase." *Id.* at 651. Further, a pre-construction

---

[7] If a PSD pre-construction permit is required, the permitting agency (here, the TCEQ) would conduct an analysis to determine "Best Available Control Technology" ("BACT"). "BACT" is "[a]n air pollution control method for a new or modified facility that through experience and research, has proven to be operational, obtainable, and capable of reducing or eliminating emissions from the facility, and is considered technically practical and economically reasonable for the facility." 30 Tex. Admin. Code § 116.10(1).

permit is not required for "routine maintenance, repair, and replacement" activity.  40 C.F.R. § 60.14(e)(1); *see also Nat'l Parks & Conservation Ass'n. v. TVA*, No. 3:01-cv-71, 2010 WL 1291335 (E.D. Tenn. Mar. 31, 2010) (finding, after bench trial, that replacement of superheater at coal plant was "routine maintenance, repair, and replacement" excluded from PSD permitting).

## III.    The CAA's Title V Operating Permit Program

Separate from the PSD ***construction*** permitting program, Title V of the CAA establishes an ***operating*** permit program for major sources of air emissions.  Title V permits compile all the various applicable requirements for a facility into a single federally enforceable air permit.  *See Pub. Citizen, Inc.*, 343 F.3d at 453; *United States v. Cemex, Inc.*, 864 F. Supp. 2d 1040, 1045 (D. Colo. 2012).  A Title V permit contains, in a single, comprehensive document, *all* Clean Air Act requirements relevant to a particular source.  *Virginia v. Browner*, 80 F.3d 869, 873 (4th Cir. 1996).  Thus, compliance with a "Title V permit assure[s] compliance with all emission limitations and other substantive CAA requirements that apply to a source."  *Envtl. Integrity Project v. EPA*, 425 F.3d 992, 993 (D.C. Cir. 2005).

Similar to the PSD program, States typically take the lead under Title V and issue operating permits to facilities within their borders under EPA-approved state law.  *See* 42 U.S.C. § 7661a(d).  Texas is authorized and approved to administer and enforce the CAA's Title V permit program in the State.  *See* 66 Fed. Reg. 63,318 (Dec. 6, 2001) (EPA approval of Texas's Title V program); *see also Pub. Citizen, Inc.*, 343 F.3d at 463 (upholding EPA's approval of Texas's Title V program).  Texas implements the Title V permit requirements through its own regulations.  *See* 30 Tex. Admin. Code Chapter 122 (Texas Title V regulations).

## STANDARD OF REVIEW

"[T]o survive a Rule 12(b)(6) motion to dismiss, the following conditions must be met: (1) every element of each cause of action must be supported by specific factual allegations; and (2) the complaint must state a plausible claim for relief." *Reardean v. CitiMortgage, Inc.*, No. A-11-CA-420-SS, 2011 WL 3268307, at *1 (W.D. Tex. July 25, 2011); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A Rule 12(b)(6) motion to dismiss for failure to state a claim is an appropriate method for raising a statute of limitations defense."  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Delhomme v. Caremark Rx, Inc.*, 232 F.R.D. 573, 579 (N.D. Tex. 2005) ("A statute of limitations defense may be properly raised in a Rule 12(b)(6) motion to dismiss when the complaint affirmatively shows that the claims are time-barred.").

## ARGUMENT

Counts 1–8 of the complaint should be dismissed.  There are three grounds.  **First**, Counts 1–3 and 6 are PSD claims alleging construction activity that, **on the face of the complaint**, occurred and was completed over **five years before** the filing of the complaint, and thus those claims are time-barred by the federal statute of limitations at 28 U.S.C. § 2462.  The Courts of Appeals that have considered these specific PSD claims have held that those claims are **one-time claims** that accrue **at the time of construction** and **expire five years** thereafter.  **Second**, Counts 7 and 8 must be dismissed because the Clean Air Act does not create a cause of action for submission of an incomplete permit application or for operating according to a duly-issued but allegedly "inadequate" Title V permit, which is the government's claim under Counts 7 and 8.  **Third**, Counts 1–8 should be dismissed for the separate reason that EPA failed to comply with the mandatory pre-suit notice requirements in 42 U.S.C. § 7413(a)(1) before commencing this

action.  EPA is required to give full notice of its regulatory findings to the permit holder *and the State* prior to commencing suit on PSD claims, *see* 42 U.S.C. § 7413(a)(1), but the complaint on its face establishes that EPA failed to do so here.[8]

I.      **The Government's Claims in Counts 1–3 and 6 Are Time-Barred by 28 U.S.C. § 2462**

The Clean Air Act itself does not contain a statute of limitations.  Thus, it is well-settled that the general federal five-year statute of limitations at 28 U.S.C. § 2462 applies to CAA claims.  *See, e.g.*, *Nat'l Parks (11th Cir.)*, 502 F.3d at 1322; *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1013–14 (8th Cir. 2010).  As applied here, 28 U.S.C. § 2462 bars the government's PSD claims in Counts 1–3 and 6.

A.      **The PSD claims accrued at the time of construction**

Under 28 U.S.C. § 2462, "the claim is barred if suit is not brought within five years of the date the claim first accrues."  *Nat'l Parks (11th Cir.)*, 502 F.3d at 1322.  A claim "first accrues" when "the plaintiff has a complete and present cause of action."  *Gabelli*, 133 S. Ct. at 1220 (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).  To avoid the time bar, "the plaintiffs must identify a wrongful act that took place within five years of their filing [the] suit."  *Nat'l Parks (11th Cir.)*, 502 F.3d at 1322 (internal quotation omitted).

_____

[8] Count 5 also alleges construction activity at Martin Lake Unit 3 more than five years before the filing of the complaint—from February 10 to April 5, 2008.  Doc. 2 ¶ 112.  The complaint was filed 5 years, 6 months, and 6 days after this construction was alleged to have started.  However, the U.S. Department of Justice, Luminant, and EFH executed a tolling agreement just before the expiration of the statute of limitations for that claim.  Tolling Agreement (App. at 26).  The Tolling Agreement excludes January 14 through July 31, 2013, from the limitations period—a period of 6 months and 18 days.  *Id.* ¶ 1.  Because the complaint relies on the 2012 NOV (which in turn defines the scope of the Tolled Claims), Doc. 2 ¶ 10, Defendants are moving to dismiss Count 5 due to lack of pre-suit notice (*see infra* Section III), but not on statute of limitations grounds at this time.  Should this Court or the Fifth Circuit hold that the 2012 NOV is legally insufficient, or should EPA withdraw the 2012 NOV, the Tolling Agreement would no longer apply to that claim, and Count 5 should also be dismissed as time-barred.

Here, the government had a complete cause of action, and thus the five-year period began

to run, at the time the allegedly unlawful "construction" or "modification" commenced.  The

"wrongful act" alleged in Counts 1-3 and 6 is the undertaking of construction or modification

activities without a PSD preconstruction permit and the failure to obtain a BACT determination

in violation of 42 U.S.C. § 7475 and the implementing Texas regulations.  Doc. 2 ¶¶ 80–81, 89–

90, 98–99, 124–25.  The Courts of Appeals that have considered these specific PSD provisions

are *"unanimous"* that the PSD claim accrues ***at the time of construction and that there is no***

***continuing violation***.  *EME Homer City Generation*, 727 F.3d at 285 (agreeing with Seventh,

Eighth, and Eleventh Circuits); *see also Midwest Generation, LLC*, 720 F.3d at 647 (applying 28

U.S.C. § 2462 to affirm dismissal of PSD claims brought by EPA); *Otter Tail Power Co.*, 615

F.3d at 1015 (affirming dismissal of PSD claims as time-barred—"[N]either the statutory

provision that creates the legal duty at issue here nor the provision for private enforcement gives

any indication that the CAA imposes ongoing operational conditions under the PSD program.");

*Nat'l Parks (11th Cir.)*, 502 F.3d at 1322-23 ("[V]iolations of the preconstruction permitting

requirements occur at the time of construction, not on a continuing basis." (internal quotation

omitted)).[9]

As the Seventh Circuit (Judge Easterbrook) recently held in affirming dismissal of

another one of EPA's cases, if a source opts not to seek a pre-construction permit at the time of

construction, "[o]nce the [federal five-year] statute of limitations expire[s], [the source operator

is] entitled to proceed as if it possessed all required construction permits."  *Midwest Generation*,

720 F.3d at 648.  As Judge Easterbrook explained:  "The violation is complete when construction

---

[9] *See also CleanCOALition*, 536 F.3d at 477–78 (affirming dismissal of PSD claims under 42
U.S.C. § 7475(a) and 30 Tex. Admin. Code § 116.111(a) on grounds other than statute of
limitations and noting that "violations of the preconstruction permitting requirements occur at the
time of construction" (quoting *Nat'l Parks (11th Cir.)*, 502 F.3d at 1323)).

commences without a permit in hand" and does *not* "continue" thereafter so as to create an ongoing violation.  *Id.* at 647 ("Nothing in the text of § 7475 even hints at the possibility that a fresh violation occurs every day until the end of the universe if an owner that lacks a construction permit operates a completed facility.").  Any other rule "would leave defendants exposed to Government enforcement action not only for five years after their misdeeds, but for an additional uncertain period into the future" and thus be "utterly repugnant to the genius of our laws."  *Gabelli*, 133 S.Ct. at 1223 (quotation omitted).

Here, Counts 1–3 and 6 *on their face* allege construction activity that began (and ended) more than five years before the government filed the complaint:

| Count | Date of Outage Work | Time between Commencement of Outage Work and Filing of Complaint | Outside Five Year Period |
|-------|--------------------|-----------------------------------------------------------------|--------------------------|
| 1 | March 4 to April 13, 2006 | 7 years, 5 months, 12 days | Yes |
| 2 | February 16 to April 5, 2007 | 6 years, 6 months, 0 days | Yes |
| 3 | February 26 to April 2, 2005 | 8 years, 5 months, 21 days | Yes |
| 6 | October 15 to November 13, 2005 | 7 years, 10 months, 1 day | Yes |

Thus, under the facts pled by the government, the PSD violations alleged in Counts 1–3 and 6 occurred, if at all, more than five years prior to the filing of the complaint when the alleged "modification" occurred without a PSD permit.  Because the face of the complaint includes facts that establish the applicability of the statute of limitations, all four claims should be dismissed with prejudice as time-barred by 28 U.S.C. § 2462.[10]  *See Vernon v. City of Dallas*, No. 3:08-cv-

---

[10] The claims should be dismissed in their entirety.  The statute of limitations bars "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise," 28 U.S.C. § 2462, which is the type of action the government has filed here.  Doc. 2

1068, 2009 WL 2486033, at *2 (N.D. Tex. Aug. 13, 2009) (citing *Jones v. Alcoa, Inc.*, 339 F.3d

359, 366 (5th Cir. 2003); *Kansa Reins. Co. v. Cong. Mortg. Corp. of Tex.*, 20 F.3d 1362, 1366

(5th Cir. 1994)) ("It is additionally well established that dismissal under Fed. R. Civ. P. 12(b)(6)

is warranted where an affirmative defense, such as the statute of limitations, is apparent on the

face of the plaintiff's complaint."); *Davis v. Dallas Cnty., Tex.*, 541 F. Supp. 2d 844, 856 (N.D.

Tex. 2008) (same).

### B.    There is no ongoing or continuing PSD violation

The government's complaint anticipates, and seeks to evade, the time bar in 28 U.S.C. §

2462 by including allegations about "ongoing" "operating" PSD violations that "continue[]" to

the present.  Doc. 2 ¶¶ 38, 80, 89, 98, 125.  This attempt to plead around the statute of limitations

should be rejected.  The plain language of the statutory and regulatory provisions cited by the

government's complaint makes clear that the PSD violation occurs, if at all, only ***at the time of***

---

¶ 1.  The government's request for injunctive relief, *id.* ¶¶ 1, 36–37, does not provide a basis for
this suit to proceed as to the stale claims.  The alleged PSD violations are not continuing and
were completed years ago, as pled by the complaint, and injunctive relief is not available under
the CAA for wholly-past failures to obtain a PSD permit.  *Midwest Generation, LLC*, 720 F.3d at
648 (affirming dismissal of stale claim for PSD violations including claim for injunctive relief—
"Today's emissions cannot be called unlawful just because of acts that occurred more than five
years before the suit began.  Once the statute of limitations expired, [the company] was entitled
to proceed as if it possessed all required construction permits."); *EME Homer City Generation*,
727 F.3d at 293 ("[A]ny injunctive relief available [in 42 U.S.C. § 7413(b)] must be limited to
ongoing violations . . . .").  The same result is required by basic principles of equity reflected in
the concurrent remedy doctrine.  *See Cope v. Anderson*, 331 U.S. 461 (1947) ("[E]quity will
withhold its relief in such a case where the applicable statute of limitations would bar the
concurrent legal remedy."); *United Transp. Union v. Fla. E. Coast Ry. Co.*, 586 F.2d 520, 523–
24 (5th Cir. 1978) (following *Cope* and holding: "This Court is of the opinion that both legal and
equitable relief is sought and that, therefore, the statute of limitations bars both."); *Fed. Election
Comm'n v. Williams*, 104 F.3d 237, 240 (9th Cir. 1996) (following *Cope* and holding that federal
government's claims for injunctive relief were barred given expiration of statute of limitations);
*but see United States v. U.S. Steel Corp.*, No. 2:12-cv-304, 2013 WL 4495665, at *11 (N.D. Ind.
Aug. 21, 2013) (concluding that "the concurrent remedy doctrine does not bar EPA's claims for
injunctive relief," but finding "almost no coherent legal analysis to support the governmental
exception to the concurrent remedy doctrine").

*construction* without a permit and not thereafter when the source is operating without having

obtained the PSD permit.   The legal obligation under the provisions cited in the complaint is to

obtain a permit prior to *construction* not *operation* of the source.   42 U.S.C. § 7475(a) ("No

major emitting facility . . . *may be constructed* . . . unless [certain conditions are met]" (emphasis

added)); 30 Tex. Admin. Code § 116.160 (2001) (incorporating 40 C.F.R. § 52.21(r)(1) (1996)

("Any owner or operator . . . who commences *construction* after the effective date of these

regulations without applying for and receiving approval hereunder, shall be subject to

appropriate enforcement action." (emphasis added)); 30 Tex. Admin. Code § 116.110 (2001)

("Before any actual work is begun on the facility, any person who plans to construct . . . shall

[obtain a permit].").   Thus, under the federal and Texas PSD provisions applicable in this case,

there simply is no "continuing" PSD violation for *operating* a source *without a PSD permit and*

*BACT*.[11]   To the extent the government's complaint asserts a "continuing violation" theory, it

misstates the law and does not state a viable claim.

---

[11] As the Eighth Circuit explained in *Otter Tail*, this reading of the regulations is confirmed by other requirements in the rules that are tied to operation.  615 F.3d at 1016.  "With respect to operation, 40 C.F.R. § 52.21(r)(1), requires compliance with two specific items: (1) 'the [permit] application submitted' and (2) 'any approval to construct.'  These provisions do not by their terms establish a freestanding duty to obtain a permit."   *Id*.   Here, as in *Otter Tail*, the government has *not* alleged that Defendants have failed to operate in accordance with any PSD permit application or permit.  Nor could it.  Instead, the government claims that Luminant failed to obtain a PSD permit that *would have*, the government claims, required BACT.  Doc. 2 ¶¶ 79–80, 88–89, 97–98, 124–25.   Indeed, the government's complaint concedes, as it must, that Luminant *did have* operating permits for Big Brown and Martin Lake "[a]t all times relevant to this complaint."  Doc. 2 ¶ 61.  But **nowhere in the complaint** does the government allege any violation of the actual terms of those permits that would establish any kind of "ongoing" violation.

Indeed, all of the Courts of Appeals that have considered whether the PSD provisions cited by the government in this case impose an ongoing or continuing obligation to obtain a permit or apply BACT, as the government's complaint alleges, have answered "no":

> **Third Circuit.** *EME Homer City Generation*, 727 F.3d at 284–87. Holding that 42 U.S.C. § 7475(a) and 40 C.F.R. § 52.21(r)(1) do not "prohibit operating a facility without BACT or a PSD permit."

> **Seventh Circuit.** *Midwest Generation*, 720 F.3d at 647. Holding that, under 42 U.S.C. § 7475(a) and 40 C.F.R. § 52.21(r)(1), "[t]he violation is complete when construction commences without a permit in hand. Nothing in the text of § 7475 even hints at the possibility that a fresh violation occurs every day until the end of the universe if an owner that lacks a construction permit operates a completed facility."

> **Eighth Circuit.** *Otter Tail*, 615 F.3d at 1016. Holding that 42 U.S.C. § 7475(a) and 40 C.F.R. § 52.21(r)(1) "prohibited only modification of [the plant] without a PSD permit or BACT, not its operation."

> **Eleventh Circuit.** *Nat'l Parks (11th Cir.)*, 502 F.3d at 1322–23. Holding that under 42 U.S.C. § 7475(a) and Alabama PSD rule "[v]iolations of the preconstruction permitting requirements occur at the time of construction, not on a continuing basis." (internal quotation omitted)).

The Fifth Circuit has not directly addressed the statutory and regulatory provisions at issue here in the statute of limitations context, although it has followed the Eleventh Circuit's reasoning as to when a PSD violation occurs (*i.e.*, "at the time of construction"), in interpreting the CAA's citizen suit provision. *See CleanCOALition*, 536 F.3d at 477–78 ("The Eleventh Circuit has held, following a long line of district court cases, that 'violations of the preconstruction permitting requirements occur at the time of construction.'") (quoting *Nat'l Parks (11th Cir.)*, 502 F.3d at 1322)).

In contrast to the Texas rules at issue here, some other State CAA rules include an operational component creating an ongoing obligation, such as the rules in Louisiana and Tennessee. The Fifth Circuit and the Sixth Circuit have considered these ***different*** State rules (different from the federal and Texas rules at issue here) and found an ongoing obligation in the

Louisiana and Tennessee State rules. *See, e.g.*, *United States v. Marine Shale Processors*, 81 F.3d 1329, 1357 (5th Cir. 1996) (considering claim under Louisiana rules); *Nat'l Parks & Conservation Ass'n, Inc. v. TVA*, 480 F.3d 410, 413, 419 (6th Cir. 2007) ("*Nat'l Parks (6th Cir.)*") (holding that 28 U.S.C. § 2462 did not time-bar claim under Tennessee rule that imposed "ongoing duty" to obtain permit with BACT).

In *Marine Shale*, for example, the Fifth Circuit considered claims under Louisiana's minor source rules (L.A.Q.R. § 6.0, *superseded, counterpart codified* at L.A.C. § 33:III:501.C.2) that established both the construction *and operational* obligations for a modified source and held that the statute of limitations did not bar the claim. 81 F.3d at 1356–57. That Louisiana rule provides that "no construction, modification, *or operation* of a facility which ultimately may result in air initiation or increase in emission or air contaminants . . . shall commence until the permit application has been approved." L.A.C. § 33:III:501.C.2 (emphasis added). This stands in stark contrast to the Texas rules here that only prohibit "construction" without a PSD permit. *See* 30 Tex. Admin. Code § 116.160 (2001) (incorporating 40 C.F.R. § 52.21(r)(1) (1996) (emphasis added) ("Any owner or operator . . . who commences *construction* . . . without applying for and receiving approval hereunder, shall be subject to appropriate enforcement action.")); *id.* § 116.110 (2001) ("Before any actual work is begun on the facility, any person who plans to construct . . . shall [obtain a permit].")." Thus, the Texas PSD rules at issue here are different and do **not** contain operating requirements such as the Louisiana rule at issue in *Marine Shale* and the Tennessee rule at issue in *Nat'l Parks (6th Cir.)*.[12]

---

[12]  The Tennessee rule in *Nat'l Parks (6th Cir.)* imposed "ongoing duties both to obtain a permit and to employ BACT." *Otter Tail*, 615 F.3d at 1017 ("The Sixth Circuit's *National Parks* decision is distinguishable from the present case for this very reason.").

Here, the PSD violations under the Texas rules alleged in the complaint occurred (if at all) and the government's claim accrued at the time construction commenced without a PSD permit.  Because that was more than five years ago for Counts 1–3 and 6, those counts must be dismissed.

## II.    Counts 7 and 8 Fail to State a Claim

Counts 7 and 8 likewise should be dismissed.  In these Counts, the government alleges that "[s]ubsequent" to the alleged modifications in Counts 1–6, Defendants "failed to obtain a *proper* or *adequate* Title V operating permit."  Doc. 2 ¶¶ 131–32, 137–38 (emphasis added).  According to the government, this is so because Defendants "failed to secure significant amendments to the [plants'] Title V permit[s]"; "failed to submit an accurate and complete Title V permit application" for the plants; "failed to include a compliance plan" in its Title V permit application; and "failed to include other specific information" in its Title V permit application. *Id*. ¶¶ 131, 137.  These claims should be dismissed with prejudice because they do not state a plausible claim.

The CAA does not make actionable in an enforcement suit the failure to amend a Title V permit or the submission of an incomplete permit application.  *See CleanCOALition*, 536 F.3d at 477–78 ("Presumably, an entity can file as many incomplete permit applications as it so chooses, but that does not mean in doing so, it is violating a preconstruction requirement or an emission standard or limitation.").  The Third Circuit recently addressed similar Title V claims in another EPA enforcement case and, in affirming dismissal of those claims, explained that in the CAA "Congress omi[tted] [] any civil cause of action for submitting incomplete applications or operating under a validly issued but incomplete permit." *EME Homer City Generation*, 727 F.3d at 298.  Here, as in that case, the government does not allege any violation of the terms of Big

Brown's and Martin Lake's duly-issued Title V permits, under which they presently operate, or any of the actual emission limits and requirements listed in those permits.  Instead, it alleges those permits are not "proper or adequate."  Doc. 2 ¶¶ 132, 138.  But the CAA does not provide a cause of action for operating under a facially-valid, but allegedly improper, Title V permit.  *See EME Homer City Generation*, 727 F.3d at 298; *Nat'l Parks (11th Cir.)*, 502 F.3d at 1326 ("[Plaintiffs'] position amounts to an argument that TVA has been violating the Act continually by operating Unit 5 *under the wrong permit*, and we reject it. . . . [A] plaintiff's recourse is to allege violations of the operating permit.") (emphasis added); *Cemex, Inc.*, 864 F. Supp. 2d at 1050 ("The Court sees no possible interpretation of this language that would permit a cause of action for the failure to obtain a 'proper' operating permit.").  Counts 7 and 8 should therefore be dismissed under Rule 12(b)(6) because they do not state a plausible claim.[13]

III.    **EPA's Failure to Give Pre-Suit Notice to the State of Texas Before Commencing this Action Requires Dismissal of Counts 1–8**

Counts 1–8 should also be dismissed because, on the face of the complaint, EPA failed to satisfy the notice requirements in 42 U.S.C. § 7413(a)(1).  As a mandatory prerequisite to filing its PSD claims in this case, EPA was required by the Clean Air Act to issue a notice of its findings of PSD violations to Defendants and the State of Texas and wait 30 days before

---

[13] The government's Title V claims must be dismissed for the additional reason that they are derivative and dependent on the (failed) PSD claims.  Counts 7 and 8 are contingent on the government's success in pursuing the "modification" claims in Counts 1–6.  Doc. 2 ¶¶ 130, 136 ("As set forth above . . ."").  Counts 1–6 must be dismissed because they are time-barred (*see* Section I) and/or because EPA failed to provide mandatory pre-suit notice (*see* Section III).  Because the government's PSD claims are not actionable, neither are its derivative Title V claims.  *See United States v. U.S. Steel Corp.*, 2013 WL 4495665, at *3 (dismissing PSD **and** Title V claims on statute of limitations grounds and holding that "the Title V permit is only deficient in this way *if* U.S. Steel was required to apply for an NSR preconstruction permit in 1990 [*i.e.*, the time of construction]" (italics in original; bold added)).

commencing suit.[14]   *See* 42 U.S.C. § 7413(a)(1); Doc. 2 ¶¶ 10, 11.   "The notice-of-violation requirement, tracking the federalism-based structure of the rest of the Clean Air Act, affords states the opportunity to take the lead in enforcement by giving the alleged violators an opportunity to negotiate a solution to the violations ***with their states***.   The EPA's enforcement authority is a backstop."   *EME Homer City Generation*, 727 F.3d at 282 n.8 (emphasis added).  A legally-sufficient notice that informs the permit holder and the State of EPA's findings is a mandatory prerequisite to EPA's prosecution of those findings in court.   *See, e.g.*, *United States v. AM Gen. Corp.*, 808 F. Supp. 1353, 1362 (N.D. Ind. 1992) ("Section 113 clearly requires that the EPA must serve . . . a NOV before it may proceed with judicial enforcement proceedings. § 113(a)(1).   The requirement is jurisdictional; the EPA is empowered to bring such a civil suit only on the basis of the specific violation alleged in the NOV . . . ."), *aff'd*, 34 F.3d 472 (7th Cir. 1994); *United States v. LTV Steel Co., Inc.*, 116 F. Supp. 2d 624, 632 (W.D. Pa. 2000) ("A jurisdictional prerequisite to the U.S. EPA's filing suit, however, is that it comply with the CAA's notice requirement at 42 U.S.C. Section 7413(a)(1)."); *Friends of the Earth v. Chevron Chem. Co.*, 900 F. Supp. 67, 76 (E.D. Tex. 1995) (holding that pre-suit notice requirement in Clean Water Act is "jurisdictional and mandatory").[15]

---

[14]  The mandatory pre-suit notice is only required for violations "of any requirement or prohibition of an applicable implementation plan or permit."   42 U.S.C. § 7413(a)(1).   Counts 7–9 do not allege violations of the Texas SIP or a permit, and thus § 7413(a)(1) does not directly impose a notice requirement for those claims.   However, because the Title V claims are derivative and dependent on the (failed) PSD claims, *see supra* note 13, Counts 7 and 8 should be dismissed as well.

[15]  Courts often describe the pre-suit notice requirement in 42 U.S.C. § 7413(a)(1) and similar provisions in other statutes as "jurisdictional," although the Fifth Circuit has suggested that such statutory prerequisites to filing suit are more procedural in nature, not jurisdictional.   *La. Envtl. Action Network (LEAN) v. City of Baton Rouge*, 677 F.3d 737, 748 (5th Cir. 2012) (holding that Clean Water Act notice requirement was not jurisdictional).   Regardless, the requirement is mandatory; *see also Hallstrom*, 493 U.S. at 31 (holding that statutory pre-suit notice requirements under Resource Conservation and Recovery Act are "mandatory conditions

Here, EPA admittedly did not provide notice to the State of Texas by withholding from it complete versions of the 2012 and 2013 NOVs.  Doc. 2 ¶¶ 10–11.  The complaint affirmatively states that EPA failed to provide the State with the appendices to the NOVs (and still has not), which is the portion that "describes the physical changes to and/or changes in the method of operation of the electric generating units that form the genesis of the noticed CAA violations." *Id*.  Notably, the State of Texas, in the pending Fifth Circuit proceeding regarding the sufficiency of the NOVs, has confirmed that it does not have the required notice of EPA's claims.  In an amicus brief filed in the consolidated Fifth Circuit cases, Texas explained:  "[T]he non-public appendices appear to provide the central basis for EPA's finding[.]"  "Because the TCEQ has not yet obtained the complete NFOVs, it cannot determine whether the NFOVs correctly apply the provisions of the Texas SIP to the power generation units at issue."  Brief of the State of Texas as Amicus Curiae in Support of Neither Party at 2, 4, *Luminant Generation Company LLC, et al. v. EPA et al.*, Consolidated Case Nos. 12-60694 & 13-60538 (5th Cir. Oct. 23, 2013) (App. at 110, 112).  EPA simply has not fulfilled its responsibility under 42 U.S.C. § 7413(a)(1) to give the State of Texas notice of its findings ***before*** filing suit.

In opposing Defendants' motion to stay, the government claims that the State of Texas has "elected not" to assert its primary role under the CAA, Doc. 25 at 12, but that is both irrelevant and not true.  EPA is required to give notice of its findings in the first instance, regardless of its view of the State's level of interest, and it has admittedly failed to do so here. Moreover, the State of Texas's amicus brief shows that the State is hindered from understanding EPA's claims ***because of EPA's failure*** to provide notice.  App. at 109–13.  Indeed, the government concedes that—despite issuing the first NOV in July 2012—***EPA waited nearly a***

---

precedent to commencing suit . . . . [A] district court may not disregard these requirements at its discretion.").

*year* before it even explained to the State how it might go about receiving a copy of the appendix under EPA's regulations.   Doc. 25 at 6.   Those EPA regulations (not Texas's) prohibit the distribution of the confidential appendix (a document created by EPA, not Luminant) unless certain procedures are followed.   40 C.F.R. § 2.301(h)(3).   EPA could have initiated the administrative process for providing the appendix to Texas when it issued the first NOV in July 2012 or even earlier, but EPA failed to do so.   And while that process has now started and is ongoing, App. at 112, it was not completed *prior* to the filing of the complaint, and thus EPA did not perfect its notice to the State prior to *commencing* this action as is required by the statute.   42 U.S.C. § 7413(b); *Hallstrom*, 493 U.S. at 26 (holding that statutory notice requirement is a "mandatory, not optional, *condition precedent* for suit" (emphasis added)).   Because the face of the complaint establishes that EPA failed to provide the mandatory pre-suit notice of its PSD claims to the State of Texas before filing its complaint, Counts 1–8 must be dismissed. *Hallstrom*, 493 U.S. at 31 ("[I]f an action is barred by the terms of a statute, *it must be dismissed*." (emphasis added)).[16]

---

[16] The overall legal adequacy of the 2012 and 2013 NOVs is currently on review in the Fifth Circuit, as explained in Defendants' motion to stay.   Doc. 13.   Defendants maintain that the Fifth Circuit has exclusive jurisdiction to resolve whether the NOVs satisfy the notice and finding requirements of 42 U.S.C. § 7413(a).   Thus, in this motion to dismiss, Defendants raise only the failure to provide the required notice to the State because that failure is established by the face of the complaint.   *Vernon*, 2009 WL 2486033, at *2 ("It is additionally well established that dismissal under Fed. R. Civ. P. 12(b)(6) is warranted where an affirmative defense . . . is apparent on the face of the plaintiff's complaint.").   Defendants reserve the right to raise other deficiencies in the notices in the event the Fifth Circuit declines jurisdiction.   If the Fifth Circuit vacates the NOVs, the government's PSD claims here must be dismissed.   *See Hallstrom*, 493 U.S. at 31.

## **CONCLUSION**

For these reasons, the Court should dismiss Counts 1–8 of the government's complaint.[17]

---

[17] Defendants do not move for the dismissal of Count 9 at this time.  However, to the extent the Court dismisses any of Counts 1–8 for the reasons stated herein, Count 9, insofar as it seeks further information in support of those Counts, would be moot.

Dated: November 22, 2013

Respectfully submitted,

/s/ P. Stephen Gidiere III

**William B. Dawson**
Texas State Bar No. 05606300
**Michael L. Raiff**
Texas State Bar No. 00784803
**Russell H. Falconer**
Texas State Bar No. 24069695
Gibson Dunn & Crutcher LLP
2100 McKinney Avenue
Dallas, Texas 75201
Phone: (214) 698-3132
Fax: (214) 571-2919
Email: wdawson@gibsondunn.com
mraiff@gibsondunn.com
rfalconer@gibsondunn.com

**P. Stephen Gidiere III**
Texas State Bar No. 24077984
**C. Grady Moore, III**
Alabama State Bar No. ASB8266O74C
**Thomas L. Casey, III**
Alabama State Bar No. ASB5572A27C
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
Phone: (205) 251-8100
Fax: (205) 488-5694
Email: sgidiere@balch.com
tcasey@balch.com

**Daniel Jude Kelly**
Texas State Bar No. 24041229
Associate General Counsel
Energy Future Holdings Corp.
1601 Bryan Street, 43rd Floor
Dallas, Texas 75201
Phone: (214) 812-7182
Fax: (214) 812-6075
Email:
dan.kelly@energyfutureholdings.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of November, 2013, I electronically filed the foregoing Brief in Support of Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Bradford T. McLane
U.S. Department of Justice
Environment & Natural Resources Division
601 D Street NW
Washington, DC 20004

Dimitri Narciso Rocha
United States Attorney's Office
1100 Commerce Street
Third Floor
Dallas, TX 75242

Anna E. Cross
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611

Elias L. Quinn
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611

/s/ P. Stephen Gidiere III
Counsel for Defendants

26

## LIST OF EXHIBITS IN APPENDIX

Notice and Finding of Violation (July 13, 2012) ...............................................................................1

Amended Notice of Violation (July 11, 2013) ...............................................................................13

Declaration of Steve Thompson (Oct. 12, 2012) ..........................................................................23

Tolling Agreement (Jan. 28, 2013) ...............................................................................................26

Brief of Petitioners, *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694
(5th Cir. June 12, 2013) (redacted version) (without addendum) ................................................29

Order, *Luminant Generation Co. LLC, et al. v. EPA*, No. 12-60694 (5th Cir. Sept.
3, 2013) ........................................................................................................................................106

Brief of the State of Texas as Amicus Curiae in Support of Neither Party,
*Luminant Generation Company LLC, et al. v. EPA et al.*, Consolidated Case Nos.
12-60694 & 13-60538 (5th Cir. Oct. 23, 2013) ..........................................................................108