## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| and ) | |
| ) | |
| SIERRA CLUB, ) | Civil Action No. 3:13-cv-3236-K |
| ) | |
| Intervenor- ) | [PROPOSED] COMPLAINT IN |
| Plaintiff ) | INTERVENTION |
| v. ) | |
| ) | |
| LUMINANT GENERATION ) | |
| COMPANY, LLC, and BIG BROWN ) | |
| POWER COMPANY, LLC ) | |
| ) | |
| Defendants. ) | |
| ) | |

## INTRODUCTION

1.  Intervenor-Plaintiff  Sierra Club brings this complaint against Luminant Generation

Company LLC and Big Brown Power Company LLC (collectively "Defendants" or

"Luminant"), pursuant to Section 304(b)(1)(B) of the Clean Air Act ("CAA" or "the Act"),

42 USC §§7604(b)(1)(B), for injunctive relief and the assessment of civil penalties for

violations of: 1) the Prevention of Significant Deterioration ("PSD") provisions of the Act,

42 U.S.C. §§ 7470-7492; 2) the federally-approved  PSD regulations of the Texas State

Implementation Plan ("SIP"), 30 Tex. Admin. Code §§ 116.110, 116.111, 116.160 (2001), 40

C.F.R. §52.21 (1996), which were adopted by the State of Texas and approved by the United

States Environmental Protection Agency ("EPA") pursuant to Section 110 of the Act, 42

1

U.S.C. § 7410; Title V of the Act, 42 U.S.C. §§ 7661-7661f; and 3) the federally-approved Texas Title V program, 30 Tex. Admin. Code Chapter 122, §§ 122.10-122.606.

2.    As alleged by the United States, Luminant engaged in major modifications of coal-fired electric generating Units 1, 2, and 3 at the Martin Lake Power Plant, and continued to operate the units thereafter without the required permits or permit revisions and without installing and operating the Best Available Control Technology ("BACT") to control emissions of sulfur dioxide ("$SO_2$") and/or oxides of nitrogen ("NOx") as required by the Act. *See* Complaint (Dkt. 30-1), *United States v. Luminant Generation Co. et al.*, Civil Action No. 3:13-cv-3236-K (N.D. Tex.,  Nov. 18, 2013) (hereafter "Government's Complaint").

3.    As alleged by the United States, Luminant and Big Brown Power engaged in a major modification of coal-fired electric generating Unit 2 at the Big Brown Power Plant. Luminant continued to operate the unit thereafter, and Big Brown Power continued to own the unit thereafter, without the required permits or permit revisions and without installing and operating BACT to control emissions of $SO_2$ as required by the Act.

4.    As alleged by the United States, as a result of Luminant's operation of these electric generating units following the unlawful major modifications without the required pollution controls and permits, significant amounts of $SO_2$ and NOx pollution have been and will continue to be released into the atmosphere.

5.    $SO_2$ and NOx can combine with other elements in the air to form particulate matter known as $PM_{2.5}$. The harms caused to human health by these pollutants once

emitted into the air include premature death, heart attacks, and respiratory problems. Nitrogen oxides also contribute to the formation of ground-level ozone, commonly known as "smog." Smog is harmful to human health. It also decreases visibility, which can detract from outdoor experiences in recreational areas such as national parks and wilderness areas.

6.   Dallas Fort Worth is not in attainment with health-based national ambient air quality standards (NAAQS) for ozone. The current standard, set by the EPA under George W. Bush, is 75 parts per billion (ppb).  In 2012, the Dallas Fort Worth nonattainment area exceeded the 75 ppb standard 36 times, sometimes reaching levels of 85 ppb or higher.

7.   Dallas Fort Worth is downwind of the Big Brown and Martin Lake plants. Air modeling studies have linked NOx emitted from these plants to ozone in the Dallas-Fort Worth nonattainment area, such that better controls on NOx at these sources would reduce Dallas-Fort Worth smog.

8.   The $SO_2$ and NOx pollution from the Big Brown and Martin Lake plants is also transported out of state to Oklahoma, Arkansas, and other states.

## JURISDICTION AND VENUE

9.   The Court has jurisdiction over this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345, and 1355. This Court has jurisdiction over the Sierra Club's claims pursuant to 42 U.S.C. § 7604(b)(1)(B).

10.   Venue is proper in this District pursuant to Section 113(b) of the Act, 42 U.S.C § 74l3(b), and 28 U.S.C. §§ 1391 and 1395, because the Defendants' principal place of business is located in this District and because Defendants reside in this District.

3

11.  Sierra Club brings this Complaint in Intervention pursuant to 42 U.S.C. §
7604(b)(1)(B), which provides Sierra Club an unconditional right of intervention when the
U.S. EPA or a State has commenced an enforcement action for claims against any person
who is alleged to have violated or be in violation of an "emissions standard or limitation"
under the Clean Air Act. *See* 42 U.S.C. § 7604(a)(1).  The claims asserted in the
Government's Complaint allege violations of emissions standards or limitations found in the
Texas State Implementation Plan and the plants' Title V permits. 42 U.S.C. § 7604(f).

## NOTICES

12.     Pursuant to Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), EPA
issued a Notice and Finding of Violation(s) ("NOV") on July 13, 2012 to Defendant
Luminant Generation Company, LLC and to its parent company Energy Future
Holdings Corporation, providing notice of violations at the Big Brown and Martin Lake
Power Plants.  As alleged by the United States, the NOV includes an appendix that
describes the physical changes to and/or changes in the method of operation of the
electric generating units that form the genesis of the noticed CAA violations. EPA
provided a copy of the body of the NOV to the State of Texas on July 13, 2012.
Luminant claims information contained in the appendix is Confidential Business
Information ("CBI").

13. EPA issued an Amended Superseding Notice of Violation ("Amended NOV") to
Defendants Luminant and Big Brown Power on July 11, 2013.  As alleged by the United
States, the Amended NOV includes an appendix that describes the physical changes to
and/or changes in the method of operation of the electric generating units that form the

4

genesis of the noticed CAA violations. Luminant claims information contained in the appendix is CBI. As alleged by the United States, EPA provided a copy of the body of the Amended NOV to the State of Texas on July 11, 2013.

14. The 30-day period required by Section 113 of the Act, 42 U.S.C. § 7413, between issuance of an NOV and commencement of a civil action lapsed prior to the United States commencing this action.

15. The United States provided actual notice of the commencement of this action to the State of Texas as required by Section 113(b) of the Act, 42 U.S.C.§ 7413(b).

16. On November 18, 2013 the United States filed a public version of the Government's Complaint, which contains certain details of the projects at issue.

## THE PARTIES

17. Defendant Luminant Generation Company, LLC is a Dallas-based limited liability company created under the laws of the State of Texas. Prior to 2007 and extending back to 1999, Luminant operated under the name of TXU Energy Corporation.

18. At all times relevant to this action, Luminant has been and continues to be the operator of the Martin Lake Power Plant (also called the Martin Lake Generating Station), including Units 1, 2, and 3, within the meaning of 40 C.F.R. §§ 60.2 and 52.01 and CAA Section 111(a)(5), 42 U.S.C. § 741l(a)(5).

19. At all times relevant to this action, Luminant has been and continues to be the operator of the Big Brown Power Plant (also called the Big Brown Generating Station), including Units 1 and 2, within the meaning of 40 C.F.R. §§ 60.2 and 52.01 and CAA Section 11l(a)(5), 42 U.S.C. § 7411(a)(5).

5

20. Defendant Big Brown Power Company, LLC is a Dallas-based, limited liability company created under the laws of the State of Texas. Prior to October 1, 2007, and extending back to 2002, Big Brown Power operated under the name of TXU Big Brown Company, LP. Since 2002, Big Brown Power has been and remains the owner of the Big Brown Power Plant within the meaning of 40 C.F.R. §§ 60.2 and 52.01 and CAA Section 111(a)(5), 42 U.S.C. § 7411(a)(5).

21. As corporate entities, each Defendant is a "person" within the meaning of Section 302(e) of the Act, 42 U.S.C. § 7602(e).

22. Defendants' Big Brown and Martin Lake plants consistently rank among the nation's top five emitters of mercury, a neurotoxin, and among the top ten emitters of sulfur dioxide pollution. Big Brown is the second largest single source of nitrogen oxides, a precursor to smog, in the Dallas-Fort Worth area.

23. The government Plaintiff in this action is the United States of America, by authority of the Attorney General of the United States, acting at the request of the U.S. EPA Administrator.

24. The citizen Plaintiff in this action is the Sierra Club. Sierra Club is an incorporated, not-for-profit organization. Its headquarters are at 85 Second Street, 2nd Floor, San Francisco, California and its Lone Star Chapter office is located at 1202 San Antonio Road, Austin, Texas. The Sierra Club's mission is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the earth's ecosystems and resources; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out these objectives. Sierra Club

has been working to improve air quality in Texas, and around the country, for several decades. Sierra Club has approximately 641,000 members, with nearly 22,000 members in Texas, more than 3,400 members in the ten-county Dallas-Forth Worth ozone non-attainment area, and several hundred members in the counties surrounding the Big Brown and Martin Lake power plants.

25. Sierra Club's members and supporters live, work, and recreate downwind of the Martin Lake and Big Brown power plants, and consequently breathe, use, and enjoy the ambient air in those areas. Those members' use and enjoyment of the air, their property, and recreational areas is impaired by pollution in excess of what it would be if Big Brown and Martin Lake had not violated, and had not continued to violate, the Clean Air Act.  The plants emit $SO_2$, $NOx$, PM, and other pollutants that exacerbate air pollution in the areas around and downwind of those plants, such as Dallas-Fort Worth.  This pollution poses a public health risk, and harms the recreational and aesthetic interests of the Sierra Club's members.

26. Sierra Club has a long history of working to protect and improve air quality in Texas, and over the past five years has prioritized enforcement of environmental laws against Luminant's coal-fired power fleet, including the Martin Lake and Big Brown power plants. Because these plants account for such a large portion of air pollution in Texas, and even the nation, Sierra Club has a strong interest in ensuring that modern pollution controls are installed at the plants.

27.  Due to its interest in ensuring clean air, and the Big Brown and Martin Lake power plants' unique status as some of the top polluters in the nation, Sierra Club has been

investigating Defendants' potential violations of the Clean Air Act's New Source Review provisions since approximately 2010. Because certain information related to such violations is not publicly available, Sierra Club sought information provided by Luminant to EPA in response to EPA's requests under Section 114 of the Clean Air Act, 42 U.S.C. §7414. *See generally* Government Complaint ¶ 9.  Although Sierra Club requested these materials from EPA under the Freedom of Information Act, Sierra Club was unable to obtain such information in a timely manner due to Luminant's broad claims of CBI, which covered a very large portion of the documents. The CBI claims have required EPA a significant amount of time to process prior to making a determination on whether the documents can be released to the public.  As a result of this delay, Sierra Club was unable to obtain the details of the suspected violations until the Government's Complaint was made public November 18, 2013.  Sierra Club continues to diligently seek that EPA release the documents underlying this action to the public unless they can legitimately be claimed as Confidential Business Information.[1]

## STATUTORY AND REGULATORY BACKGROUND

28. Sierra Club adopts and incorporates the statutory and regulatory background set forth in the Government's Complaint, paragraphs 22 through 45, 47, and 50 to 66.

## GENERAL ALLEGATIONS

29. Sierra Club adopts and incorporates the general allegations in the Government's Complaint, paragraphs 67 through 74.

---

[1] *See, e.g.*, Order on Settlement Agreement, *Sierra Club v. EPA*, 3:11-cv-00846-MEJ(N.D.Cal. Oct. 2, 2013).

## FIRST CLAIM FOR RELIEF
(Martin Lake Unit 1 2006 $SO_2$ PSD Claim)

30.  Paragraphs 1 through 29 are re-alleged and incorporated by reference.

31. Luminant began actual construction and then operation of one or more "major modifications", as defined in the Clean Air Act, EPA regulations, and the Texas SIP, at Martin Lake Unit 1 in approximately March 2006. Major capital projects were performed during a scheduled outage beginning on or about March 4, 2006, and ending on or about April 13, 2006.  Additional details about this project are provided in the redacted portions of paragraph 76 of the Government's Complaint.

32. Such physical and/or operational changes are the type generally expected to increase a unit's operation and thereby its emissions.  Thus, Luminant should have expected that Unit 1 would operate more on an annual basis following the physical and/or changes in 2006.

33. The changes to Unit 1 therefore "would result in a significant net emissions increase," as defined by the Texas SIP, for $SO_2$.

34. Luminant did not apply for or obtain a PSD permit authorizing the Martin Lake Unit 1 2006 physical change(s) and/or change(s) in the method of operation.

35. By failing to obtain a PSD permit for the Unit 1 2006 physical change(s) and/or change(s) in the method of operation, Luminant violated and continues to violate 42 U.S.C. § 7475; Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R. § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

36. Because the Martin Lake Unit 1 2006 physical changes and/or changes in the method of operation constituted a "major modification" or "major modifications", Luminant is and was required to, among other things: (1) obtain a PSD permit; (2) undertake a BACT determination in connection with the major modification; (3) install and operate controls meeting BACT for $SO_2$ emissions; (4) continuously meet emission rates constituting BACT; and (5) demonstrate that emissions from the major modification would not cause or contribute to air pollution in violation of any national ambient air quality standard.

37. In failing to install and operate BACT for control of $SO_2$ emissions, and failing to continuously meet the required BACT emission rates applicable to the modified Martin Lake Unit 1, Luminant violated and continues to violate Section 165 of the Act, 42 U.S.C. § 7475; Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R. § 52.21, as incorporated by 30 Tex. Adinin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

38. Unless restrained by an order of this Court, these violations will continue. As provided in 42 U.S.C. §§ 7413(b) and 7477, the violations set forth above subject Luminant to injunctive relief and/or a civil penalty of up to up to $32,500 per day for each such violation occurring on or after March l6, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF
(Martin Lake Unit 2 2007 $SO_2$ and $NO_x$ PSD Claim)

39. Paragraphs 1 through 29 are re-alleged and incorporated by reference.

40. Luminant began actual construction and then operation of one or more "major modifications" as defined in the Clean Air Act, EPA regulations, and the Texas SIP, at Martin Lake Unit 2 in approximately February, 2007. Major capital projects were performed during a scheduled outage beginning on or about February 16, 2007, and ending on or about April 5, 2007. Additional details about the project are included in paragraph 85 of the Government Complaint.

41. Such physical and/or operational changes are the type generally expected to increase a unit's operation and thereby its emissions. Thus, Luminant should have expected that Unit 2 would operate more on an annual basis following the physical and/or changes in 2007.

42. The changes to Unit 2 therefore "would result in a significant net emissions increase," as defined by the Texas SIP, for $SO_2$ and NOx.

43. Luminant did not apply for or obtain a PSD permit authorizing the Martin Lake Unit 2 2007 physical change(s) and/or change(s) in the method of operation.

44. In failing to obtain a P5D permit for the Unit 2 2007 physical changes and/or changes in the method of operation, Luminant violated and continues to violate 42 U.S.C. § 7475; Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R. § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

45. Because the Martin Lake Unit 2 2007 physical change(s) and/or change(s) in method of operation constituted one or more "major modification," Luminant was required to, among other things: (1) obtain a PSD permit; (2) undertake a BACT determination in

11

connection with the major modification; (3) install and operate pollution controls to achieve BACT for $SO_2$ and NOx emissions; (4) continuously meet BACT emission rates; and (5) demonstrate that emissions from the major modification would not cause or contribute to air pollution in violation of any national ambient air quality standard.

46. In failing to install and operate pollution controls for $SO_2$ and NOx emissions, and failing to continuously meet the required BACT emission rates applicable to the modified Martin Lake Unit 2, Luminant violated and continues to violate 30 Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R. § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

47. Unless restrained by an order of this Court, these violations will continue. As provided in 42 U.S.C. §§ 7413(b) and 7477, the violations set forth above subject Defendant to injunctive relief and/or a civil penalty of up to up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

### THIRD CLAIM FOR RELIEF
(Martin Lake Unit 3 2005 $SO_2$ PSD Claim)

48.  Paragraphs 1 through 29 are re-alleged and incorporated by reference.

49. Luminant began actual construction and then operation of one or more "major modifications" as defined in the Clean Air Act, EPA regulations, and the Texas SIP, at Martin Lake Unit 3 in approximately February 2005. One or more major capital projects were performed during a scheduled outage beginning on or about February 26, 2005 and

ending on or about April 2, 2005. Additional details about the modification are provided in paragraph 94 of the Government Complaint.

50. Such physical and/or operational changes are the type generally expected to increase a unit's operation and thereby its emissions. Thus, Luminant should have expected that Unit 3 would operate more on an annual basis following the physical and/or changes in 2005.

51. The changes to Unit 3 therefore "would result in a significant net emissions increase," as defined by the Texas SIP, for $SO_2$.

52. Luminant did not apply for or obtain a PSD permit authorizing the Unit 3 2005 physical changes and/or changes in the method of operation.

53. In failing to obtain a PSD permit for the Unit 3 2005 physical changes and/or changes in the method of operation, Luminant violated and continues to violate 42 U.S.C. § 7475; Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

54. Because the Martin Lake Unit 3 2005 physical changes and/or changes in the method of operation constituted one or more "major modification," Luminant was required to, among other things: (1) obtain a PSD permit; (2) undertake a BACT determination in connection with the major modification; (3) install and operate pollution controls to achieve BACT for $SO_2$ emissions; (4) continuously meet BACT emission rates; and (5) demonstrate that emissions from the major modification would not cause or contribute to air pollution in violation of any national ambient air quality standard.

55. In failing to install and operate pollution controls for $SO_2$ emissions, and failing to continuously meet the required BACT emission rates applicable to the modified Martin Lake Unit  3, Luminant violated and continues to violate 30 Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R. § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

56. Unless restrained by an order of this Court, these violations will continue. As provided in 42 U.S.C. §§ 7413(b) and 7477, the violations set forth above subject Defendant to injunctive relief and/or a civil penalty of up to up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

## FOURTH CLAIM FOR RELIEF
(Martin Lake Unit 1 2009 $NO_x$ PSD Claim)

57. Paragraphs 1 through 29 are re-alleged and incorporated by reference.

58. Luminant began actual construction and then operation of one or more "major modifications" as defined in the Clean Air Act, EPA regulations, and the Texas SIP, at Martin Lake Unit 1 in approximately March, 2009. One or more major capital projects were performed during a scheduled outage beginning on or about March 1, 2009, and ending on or about April 1, 2009.  Additional details about the modification are provided in paragraphs 103 and 104 of the Government Complaint.

59. Such physical and/or operational changes are the type generally expected to increase a unit's operation and thereby its emissions.  Thus, Luminant should have expected that

Unit 1 would operate more on an annual basis following the physical and/or changes in 2009.

60. The changes to Unit 1 therefore "would result in a significant net emissions increase," as defined by the Texas SIP, for NOx.

61. Luminant did not apply for or obtain a PSD permit authorizing the Unit 1 2009 physical changes and/or changes in the method of operation.

62. In failing to obtain a PSD permit for the Unit 1 2009 physical changes and/or changes in the method of operation, Luminant violated and continues to violate 42 U.S.C. § 7475; Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

63. Because the Martin Lake Unit 1 2009 physical changes and/or changes in the method of operation constituted one or more "major modification," Luminant was required to, among other things: (1) obtain a PSD permit; (2) undertake a BACT determination in connection with the major modification; (3) install and operate pollution controls to achieve BACT for NOx emissions; (4) continuously meet BACT emission rates; and (5) demonstrate that emissions from the major modification would not cause or contribute to air pollution in violation of any national ambient air quality standard.

64. In failing to install and operate pollution controls for NOx emissions, and failing to continuously meet the required BACT emission rates applicable to the modified Martin Lake Unit 1, Luminant violated and continues to violate 30 Tex. Admin. Code §§ 116.110 &

116.111; 40 C.F.R. § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

65. Unless restrained by an order of this Court, these violations will continue. As provided in 42 U.S.C. §§ 7413(b) and 7477, the violations set forth above subject Defendant to injunctive relief and/or a civil penalty of up to up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

## FIFTH CLAIM FOR RELIEF
(Martin Lake Unit 3 2008 $NO_x$ PSD Claim)

66. Paragraphs 1 through 29 are re-alleged and incorporated by reference.

67. Luminant began actual construction and then operation of one or more "major modifications" as defined in the Clean Air Act, EPA regulations, and the Texas SIP, at Martin Lake Unit 3 in approximately February, 2008. One or more major capital projects were performed during a scheduled outage beginning on or about February 10, 2008, and ending on or about April 5, 2008. Additional details about the modification are provided in paragraphs 112 and 113 of the Government Complaint.

68. Such physical and/or operational changes are the type generally expected to increase a unit's operation and thereby its emissions. Thus, Luminant should have expected that Unit 3 would operate more on an annual basis following the physical and/or changes in 2009.

69. The changes to Unit 3 therefore "would result in a significant net emissions increase," as defined by the Texas SIP, for NOx.

16

70. Luminant did not apply for or obtain a PSD permit authorizing the Unit 3 2008 physical changes and/or changes in the method of operation.

71. In failing to obtain a PSD permit for the Unit 3 2008 physical changes and/or changes in the method of operation, Luminant violated and continues to violate 42 U.S.C. § 7475; Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

72. Because the Martin Lake Unit 3 2008 physical changes and/or changes in the method of operation constituted one or more "major modification," Luminant was required to, among other things: (1) obtain a PSD permit; (2) undertake a BACT determination in connection with the major modification; (3) install and operate pollution controls to achieve BACT for NOx emissions; (4) continuously meet BACT emission rates; and (5) demonstrate that emissions from the major modification would not cause or contribute to air pollution in violation of any national ambient air quality standard.

73. In failing to install and operate pollution controls for NOx emissions, and failing to continuously meet the required BACT emission rates applicable to the modified Martin Lake Unit 3, Luminant violated and continues to violate 30 Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R. § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

74. Unless restrained by an order of this Court, these violations will continue. As provided in 42 U.S.C. §§ 7413(b) and 7477, the violations set forth above subject Defendant to injunctive relief and/or a civil penalty of up to up to $32,500 per day for each such

17

violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

### SIXTH CLAIM FOR RELIEF
(Big Brown Unit 2 2005 $SO_2$ PSD Claim)

75. Paragraphs 1 through 29 are re-alleged and incorporated by reference.

76. Defendants began actual construction and then operation of one or more "major modifications" as defined in the Clean Air Act, EPA regulations, and the Texas SIP, at Big Brown Unit 2 in approximately October, 2005. One or more major capital projects were performed during a scheduled outage beginning on or about October 15, 2005, and ending on or about November 13, 2005. Additional details about the modification are provided in paragraph 121 of the Government Complaint.

77. Such physical and/or operational changes are the type generally expected to increase a unit's operation and thereby its emissions. Thus, Defendants should have expected that Unit 2 would operate more on an annual basis following the physical and/or changes in 2005.

78. The changes to Unit 2 therefore "would result in a significant net emissions increase," as defined by the Texas SIP, for $SO_2$.

79. Defendants did not apply for or obtain a PSD permit authorizing the Unit 2 2005 physical changes and/or changes in the method of operation.

80. In failing to obtain a PSD permit for the Unit 2 2005 physical changes and/or changes in the method of operation, Defendants violated and continue to violate 42 U.S.C. § 7475; Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R § 52.21, as incorporated by 30

18

Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

81. Because the Big Brown Unit 2 2005 physical changes and/or changes in the method of operation constituted one or more "major modification," Defendants were required to, among other things: (1) obtain a PSD permit; (2) undertake a BACT determination in connection with the major modification; (3) install and operate pollution controls to achieve BACT for NOx emissions; (4) continuously meet BACT emission rates; and (5) demonstrate that emissions from the major modification would not cause or contribute to air pollution in violation of any national ambient air quality standard.

82. In failing to install and operate pollution controls for $SO_2$ emissions, and failing to continuously meet the required BACT emission rates applicable to the modified Big Brown Unit 2, Defendants violated and continue to violate 30 Tex. Admin. Code §§ 116.110 & 116.111; 40 C.F.R. § 52.21, as incorporated by 30 Tex. Admin. Code § 116.160; and the PSD regulations contained in the federally enforceable Texas SIP.

83. Unless restrained by an order of this Court, these violations will continue. As provided in 42 U.S.C. §§ 7413(b) and 7477, the violations set forth above subject Defendants to injunctive relief and/or a civil penalty of up to up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

## SEVENTH CLAIM FOR RELIEF
### (Title V Violations at the Martin Lake Plant)

84. Paragraphs 1 through 29 are re-alleged and incorporated here by reference.

85. As set forth above, Luminant commenced major modifications of Martin Lake Unit 1 in 2006 and 2009; of Martin Lake Unit 2 in 2007; and of Martin Lake Unit 3 in 2005 and 2008. As a result, these major modifications triggered the requirements to, among other things, obtain a PSD permit establishing emissions limitations that meet BACT and operate in compliance with BACT. Luminant failed to meet these requirements.

86. Subsequently, Luminant failed to secure significant amendments to its Title V permit for the Martin Lake Plant; failed to submit an accurate and complete Title V Permit application for the Martin Lake Plant that identifies all applicable requirements; failed to accurately certify compliance with such requirements; failed to include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to utilize BACT based on a BACT determination under PSD); and failed to include other specific information necessary to implement and enforce the applicable requirements of the Act or to determine the applicability of such requirements.

87. Luminant failed to obtain a proper or adequate Title V operating permit for the Martin Lake Plant that contained emissions limitations for $SO_2$ and NOx that meets the required BACT emission rates. Luminant thereafter has operated Martin Lake Units 1, 2, and 3 without meeting such limitations and without having an adequate Title V operating permit that requires compliance with such limitations or contains a compliance plan for all applicable requirements for which the source is not in compliance.

88. Luminant has therefore violated and continues to violate 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a); 40 C.F.R. §§ 70.5 and 70.6; and the Texas Title V operating permit regulations at 30 Tex. Admin. Code Chapter 122.

89. Unless restrained by an order of this Court, these violations will continue. As provided in 42 U.S.C. §§ 7413(b)and 7477, the violations set forth above subject Luminant to injunctive relief and/or a civil penalty of up to up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2004; and up to $37,500 per day for each such violation occurring on or after January 13, 2009 pursuant to 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

## EIGHTH CLAIM FOR RELIEF
(Title V Violations at the Big Brown Plant)

90. Paragraphs 1 through 30 are re-alleged and incorporated here by reference.

91. As set forth above, Defendants commenced a major modification of Big Brown Unit 2 in 2005. As a result, this major modification triggered the requirement to, among other things, obtain a PSD peimit establishing emissions limitations that meet BACT and operate in compliance with BACT. Defendants failed to meet these requirements.

92. Subsequently, Defendants failed to secure significant amendments to the Title V permit for the Big Brown Power Plant; failed to submit an accurate and complete Title V permit application for the Big Brown Power Plant that identifies all applicable requirements; failed to accurately certify compliance with such requirements; failed to include a compliance plan for all applicable requirements for which the source was not in compliance (including the requirement to utilize BACT based on a BACT determination under PSD); and failed to include other specific information necessary to implement and enforce the applicable requirements of the Act or to determine the applicability of such requirements.

93. Defendants thus failed to obtain a proper or adequate Title V operating permit for Big Brown Power Plant that contained emissions limitations for $SO_2$ based on a BACT

21

determination. Defendant Luminant has thereafter operated Big Brown Unit 2, and Big Brown Power has thereafter owned Big Brown Unit 2, without meeting such limitations and without having an adequate Title V operating permit for the Big Brown Power Plant that requires compliance with such limitations or contains a compliance plan for all applicable requirements for which the source is not in compliance.

94. Defendants have therefore violated and continue to violate 42 U.S.C. §§ 7661a(a), 7661b(c), and 7661c(a); 40 C.F.R. §§ 70.5 and 70.6; and the Texas Title V operating permit regulations at 30 Tex. Admin. Code Chapter 122.

95. Unless restrained by an order of this Court, these violations will continue. As provided in 42 U.S.C. §§ 7413(6) and Section 7477, the violations set forth above subject Defendants to injunctive relief and/or a civil penalty of up to up to $32,500 per day for each such violation occurring on or after March 16, 2004 and up to and including January 12, 2009; and up to $37,500 per day for each such violation occurring on ar after January 13, 2009 pursuant to 28 U.S.C. § 2461, as amended by 31 U.S.C. § 3701, and 40 C.F.R. § 19.4.

## PRAYER FOR RELIEF

WHEREFORE, based upon all the allegations set forth above, Sierra Club requests that this Court:

1.  Permanently enjoin Defendants from operating Martin Lake Units 1, 2, and 3 and Big Brown Unit 2 except in accordance with the Clean Air Act and all applicable regulatory requirements;

2.  Order Defendants to remedy their violations by, among other things, installing and operating pollution controls meeting BACT at Martin Lake Units 1, 2, and 3 to

control $SO_2$ and NOx emissions, and installing and operating BACT at Big Brown Unit 2 to control $SO_2$ emissions;

3.   Order Defendants to apply for and comply with New Source Review permits under Parts C and/or D of Title I of the Clean Air Act, as appropriate, in conformity with the permitting requirements of the Texas SIP and the PSD requirements of the Clean Air Act at the time of the permitting action;

4.   Order Defendants to secure amendments to the Title V Permits for the Big Brown and Martin Lake Power Plants incorporating the operating requirements of the New Source Review Permits as applicable requirements;

5.   Order Defendants to surrender emission allowances or credits to offset and mitigate their illegal emissions;

6.   Order Defendants to take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations of the CAA alleged above;

7.   Order Defendants to conduct audits of their operations to determine if additional modifications have occurred which would require Defendants to meet the Prevention of Significant Deterioration, New Source Review and Title V requirements and report the results of these audits to the United States;

8.   Assess a civil penalty against Defendants of up to $32,500 per day for each such violation occurring after March 15, 2004, and through January 12, 2009; and up to $37,500 per day for each such violation occurring after January 12, 2009;

9.   Award the government and citizen plaintiffs' costs of this action; and,

10.  Grant such other relief as the Court deems just and proper.

Dated: December 23, 2013                    Respectfully submitted,

                                            */s/ Leighton Durham*
                                            Leighton Durham
                                            Kelly, Durham & Pittard, LLP
                                            PO Box 224626
                                            Dallas, Texas 75222
                                            214-946-8000 Telephone
                                            214-946-8433 Facsimile

                                            **ATTORNEYS FOR SIERRA CLUB**

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of December, 2013, I electronically filed the foregoing

Proposed Complaint in Intervention with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to the following:

William B. Dawson
Michael L. Raiff
Gibson Dunn & Crutcher LLP
2100 McKinney Avenue
Dallas, Texas 75201
wdawson@gibsondunn.com
mraiff@gibsondunn.com

P. Stephen Gidiere III
C. Grady Moore, III
Thomas L. Casey, III
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203
sgidiere@balch.com
tcasey@balch.com

Daniel Jude Kelly
Associate General Counsel
Energy Future Holdings Corp.
1601 Bryan Street, 43rd Floor
Dallas, Texas 75201
dan.kelly@energyfutureholdings.com

Bradford T. McLane
U.S. Department of Justice
Environment & Natural Resources Division
601 D Street NW
Washington, DC 20004
bradford.mclane@usdoj.gov

Dimitri Narciso Rocha
United States Attorney's Office
1100 Commerce Street
Third Floor
Dallas, TX 75242
dimitri.rocha@usdoj.gov

Anna E. Cross
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611
anna.cross@usdoj.gov

Elias L. Quinn
U.S. Department of Justice
Environment & Natural Resources Division
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611

*/s/ Leighton Durham*