UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No: 3:13-CV-3236-K |
| LUMINANT GENERATION COMPANY, LLC, and BIG BROWN POWER COMPANY, LLC, | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AN ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. No. 47) (the "Motion"). After careful consideration of the motion, the response, the reply, the appendices, the applicable law, and relevant portions of the record, the Court **GRANTS in part and DENIES in part** the Motion.  The Court **grants** the Motion as to claims 1-3 and 5-8, therefore, these claims are **dismissed with prejudice**.  The Court **denies** the Motion as to claims 4 and 9, which remain before the Court.

I.  **Procedural and Factual Background**

Defendant Luminant Generation Company LLC ("Luminant") operates power plants and sells electricity.  Luminant is the present operator of the Big Brown Power Plant ("Big Brown") in Freestone County, Texas.  Some of the work at issue in this case was conducted by Luminant's predecessor, TXU Generation Company LP

("TXU"). Big Brown is owned by Defendant Big Brown Power Company, LLC ("Big Brown Power"). Luminant is the owner and operator of the Martin Lake Power Plant ("Martin Lake") in Rusk County, Texas. Big Brown has two generating units, and Martin Lake has three generating units.

According to Plaintiff, between 2005 and 2009, Defendants Luminant and Big Brown Power ("Defendants") modified and operated Martin Lake Units 1, 2, and 3 and Big Brown Unit 2 in violation of the Clean Air Act. The New Source Review, added to the Clean Air Act in 1977, requires new and modified sources to install and operate modern controls for pollutants. Big Brown and Martin Lake were initially grandfathered under the New Source Review, but Plaintiff asserts that when Defendants modified four electric generating units between 2005 and 2009, their grandfathered status ended and Defendants were required to comply with the New Source Review. Plaintiff argues that Defendants continue to violate the Clean Air Act by operating units without the required permits and pollution controls. Plaintiff alleges six counts of Prevention of Significant Deterioration violations, two counts of Title V violations, and one count of violation of Section 114 of the Clean Air Act.

According to Defendants, TXU, Luminant's predecessor, began responding to inquiries from the Environmental Protection Agency ("EPA") regarding its plants in 2000. In June 2008, the EPA issued its first formal request for information to Luminant. On July 13, 2012, the EPA issued a Notice of Violation related to Luminant and its parent company, Energy Future Holdings Corp. The EPA did not

sue on the 2012 Notice of Violation. Luminant and Energy Future Holdings Corp., subsequently filed a petition for review, pursuant to 42 U.S.C. § 7607(b)(1), of the 2012 Notice of Violation, challenging the sufficiency of the notice, with the United States Fifth Circuit Court of Appeals.

In July 2013, after Luminant's brief was filed at the Fifth Circuit, the EPA issued an amended and superseding Notice of Violation to Defendants. Defendants filed a second petition for review with the Fifth Circuit, which was consolidated with the first petition. Plaintiff the United States of America ("Plaintiff" or "the government") filed this lawsuit on August 16, 2013. On January 10, 2014, this Court stayed the proceedings in this case pending the resolution of the related cases before the Fifth Circuit. On July 3, 2014, the Fifth Circuit issued its decision, holding that Notice of Violations were not "final agency action" and are not reviewable in the court of appeals. The Court lifted the stay, and Defendants filed this Motion to Dismiss.

## II. Motion to Dismiss Standard

Defendants move to dismiss Plaintiff's claims for injunctive relief under FED. R. CIV. PRO. 12(b)(1). Under Rule 12(b)(1), a case must be dismissed for lack of subject matter jurisdiction where the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Assn. of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir. 1998).

Defendants move to dismiss Plaintiff's other claims under FED. R. CIV. PRO. 12(b)(6). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Twombly,* 550 U.S. at 556. The court is responsible for determining whether the plaintiff has stated a legally cognizable claim that is plausible, and permits the court to infer more than the mere possibility of misconduct. *Iqbal,* 556 U.S. at 679. Plausibility does not require facts showing a probability that the plaintiff will prevail. *Twombly,* 550 U.S. at 556. Conclusory allegations and unwarranted factual deductions will not suffice to avoid a motion to dismiss. *United States ex rel. Willard v. Humana Health Plan of Tex., Inc.,* 336 F.3d 375, 379 (5th Cir. 2003). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident form the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis from tolling or the like." *Jones v. Alcoa*, 339 F.3d 359, 366 (5th Cir. 2003).

III.   **Defendants' Motion to Dismiss**

Defendants argue that Plaintiff's claims 1-3, 5, and 6 should be dismissed because they are time-barred by the applicable five-year statute of limitations. They argue

that claims 7 and 8 should be dismissed because they fail to state a claim. They assert counts 1-8 should be dismissed because the EPA failed to comply with mandatory pre-suit notice requirements. Defendants argue that if claims 1-8 are dismissed, then claim 9, a procedural claim, would be moot.

### A. Plaintiff's Prevention of Significant Deterioration Claims

In claims 1-3, 5, and 6, Plaintiff alleges that Defendants failed to obtain the Prevention of Significant Deterioration permit required under the Clean Air Act prior to modification of their facilities and violated the best available control technology ("BACT") emission limits. Defendants assert these claims are time-barred by the statute of limitations.

#### 1. Prevention of Significant Deterioration Program of the Clean Air Act

Congress enacted the 1970 Amendments to the Clean Air Act to establish "a comprehensive national program that made the States and the Federal Government partners in the struggle against air pollution." *CleanCOALition v. TXU Power*, 536 F.3d 469, 471 (5th Cir. 2008). The 1977 amendments to the Clean Air Act created the Prevention of Significant Deterioration pre-construction permit program. *Id*. at 472; *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 279 (3rd Cir. 2013). The Prevention of Significant Deterioration program requires operators of areas with clean air to obtain a permit from the state or the EPA before constructing or modifying a "major emitting facility (which emits significant air pollution even with pollution controls installed)" to ensure that the new emissions will not

significantly degrade the air quality. *Homer*, 727 F.3d at 279 (internal citation and quotation omitted). This case-by-case permitting process considers "energy, environmental, and economic impacts and other costs to determine the [BACT] for every regulated pollutant." *Id*. at 279-80 (internal citation and quotations omitted).

Under 28 U.S.C § 7475(a), "no major emitting facility . . . may be constructed . . . . unless" it meets the Prevention of Significant Deterioration requirements, including obtaining a permit and installing BACT emission controls. *Id*. at 284. This provision prohibits construction without obtaining a Prevention of Significant Deterioration permit or using BACT. *Id*. Construction is defined to include "modifications," but it does not include "operation." *Id*. If an owner that lacks a construction permit operates a completed facility, a new violation of Prevention of Significant Deterioration permitting requirements does not occur daily. *Id*. ("[n]othing in the text of § 7475 even hints at the possibility that a fresh [Prevention of Significant Deterioration] violation occurs every day until the end of the universe if an owner that lacks a construction permit operates a completed facility") (citing *United States v. Midwest Generation, LLC*, 720 F.3d 644, 647 (7th Cir. 2013)). The intent was that the Prevention of Significant Deterioration permit provision applies only to preconstruction, not to operation. *Id*. The violation is not ongoing, and instead is complete when construction or modification begins without the permit in hand. *Id*. at 285 (citing *Midwest Generation, LLC*, 720 F.3d at 647).

"The [Prevention of Significant Deterioration] program is primarily implemented by the states through state implementation plans." *Sierra Club v. Otter Tail Power Co.,* 615 F.3d 1008, 1011 (8th Cir. 2010) (internal citation and quotations omitted). "Each state shall . . . adopt . . . a plan which provides for implementation, maintenance, and enforcement of such primary . . . [and] secondary standard in each air quality control region (or portion thereof) within such State." 42 U.S.C. § 7410(a)(1); *see CleanCOALition*, 536 F.3d at 472. Upon approval by the EPA, a state implementation plan becomes federally enforceable by the EPA. *Louisiana Envtl. Action Network v. U.S. E.P.A,* 382 F.3d 575, 579 (5th Cir. 2004). Further, each state implementation program must include a permit program. 42 U.S.C. § 7410(a)(2)(C). In Texas, the Texas Commission on Environmental Quality administers the state's Clean Air Act program. *CleanCOALition*, 536 F.3d at 472. Similar to the provision under the Clean Air Act, the Texas Preconstruction Permit statute requires that "before work is begun on the construction of a new facility or a modification of an existing facility that may emit air contaminants, the person planning the construction or modification must obtain a permit or permit amendment from the commission." Tex. Health & Safety Code § 382.0518(a).

The Clean Air Act does not establish a limitation period for the commencement of lawsuits. *Otter Tail Power Co.,* 615 F.3d at 1013; *see Nat'l Parks & Conservation Ass'n, Inc. v. Tennessee Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir. 2007). Because the Clean Air Act does not establish a limitations period, legal claims

brought under the Clean Air Act are subject to the general five-year statute of limitations established by 28 U.S.C. § 2462. *Nat'l Parks*, 502 F.3d at 1322. A claim is barred if suit is not brought within five years of the date the claim first accrues. 28 U.S.C. § 2462; *Nat'l Parks*, 502 F.3d at 1322. A claim accrues "when the plaintiff has a complete and present cause of action." *Gabelli v. S.E.C.*, 133 S. Ct. 1216, 1220 (2013) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). A claim under the Clean Air Act first accrues on the date that a violation first occurs. *Nat'l Parks*, 502 F.3d at 1322.

"By its plain language, the statute of limitations set forth in 28 U.S.C. § 2462 applies only to claims for legal relief; it does not apply to equitable remedies." *Nat'l Parks*, 502 F.3d at 1326 (internal citation omitted). Where a party seeks both legal and equitable remedies, and its legal remedies are barred by the statute of limitations, the party's equitable claims are barred by the concurrent remedy doctrine. *See United Transp. Union v. Fla. E. Coast Ry. Co.*, 586 F.2d 520, 523-24 (5th Cir. 1978) (holding that the statute of limitations bars both legal and equitable relief); *Nat'l Parks*, 502 F.3d at 1326 (citing *Cope v. Anderson*, 331 U.S. 461, 464 (1947)) (because legal claims were time-barred, claims for declaratory and injunctive relief were barred by concurrent remedy doctrine).

### 2. Plaintiff's Prevention of Significant Deterioration Claims are Time-Barred

Defendants argue that Plaintiff had a complete cause of action when the allegedly unlawful modification began and that the five year statute of limitations

8

started running at that time. Defendants state that the time elapsed between the commencement of the work and the filing of the complaint exceeds five years on claims 1-3, 5, and 6, and those claims should be dismissed. Defendants argue that under both the federal and Texas Prevention of Significant Deterioration programs, there is no continuing violation for operating a source without a Prevention of Significant Deterioration permit and BACT.

As to claim 5, Defendants assert that Luminant, its parent company, and the U.S. Department of Justice entered into a tolling agreement excluding January 14, 2013 to July 31, 2013 from the limitations period. They argue that the tolling agreement only applies to alleged violations in the July 2012 Notice of Violation, and because that Notice of Violation was replaced and superseded by the July 2013 Amended Notice of Violation, the tolling agreement does not apply. They argue that the EPA confirmed in its brief before the Fifth Circuit that the July 2013 Amended Notice of Violation superseded the July 2012 Notice of Violation. Defendants assert that claim 5 is also barred by the statute of limitations.

Defendants argue that the statute of limitations also extends to injunctive relief for two reasons. First, they argue the nature of a Prevention of Significant Deterioration claim indicates that injunctive relief is not available. They assert that because the alleged Prevention of Significant Deterioration violations are not continuing in nature, district courts do not have jurisdiction to grant injunctive relief for wholly past failures. They argue the Clean Air Act provides for injunctive relief

for alleged Prevention of Significant Deterioration violations, but only to prevent the construction or modification of a major emitting facility, not after construction or modification. Further, they assert that because Congress provides a particular remedy for Prevention of Significant Deterioration violations before construction or modification but does not include relief for past violations, Congress intended not to provide for relief for past violations and courts cannot expand the statute to include such relief. Second, they argue because the government's legal remedy is barred by the statute of limitations, under the concurrent remedy doctrine, its equitable claims are also time-barred.

    Plaintiff argues that while Defendants' unlawful activity began when they illegally engaged in the physical and operational changes at issue, the violations are ongoing. Plaintiff argues that Defendants failed to obtain Prevention of Significant Deterioration permits prior to modification, which is an ongoing violation. Plaintiff also asserts that Defendants never utilized BACT at their modified plants and that they have emitted and continue to emit pollution at levels exceeding the Prevention of Significant Deterioration limits, which is an ongoing violation. Plaintiff argues that because the violations are ongoing, claims 1-3, 5, and 6 are within the five-year statute of limitations, and Defendants are liable for daily penalties under the Clean Air Act. In addition, Plaintiff argues that the tolling agreement regarding claim 5 was not abrogated by the July 2013 Amended Notice of Violation because the Amended Notice of Violation includes the same claims as the July 2012 Notice of Violation so

claim 5 is not time-barred. Plaintiff also alleges that claim 5 also asserts that Luminant changed the method of operation of the boiler within five years prior to the United States filling this lawsuit, so regardless of the tolling agreement, the statute of limitations does not bar claim 5.

In response to Defendants' arguments regarding injunctive relief, Plaintiff argues that the Clean Air Act does not limit its ability to bring injunctive relief claims. Plaintiff asserts that 28 U.S.C. § 2462 does not apply to claims for remedial relief to protect the public health and welfare and that courts, including the Fifth Circuit, have rejected § 2462 as a bar to claims for equitable relief.

Plaintiff relies on the case *United States v. ITT Continental Banking Co.*, 420 U.S. 223 (1975), to support its position that the violations are ongoing. The *ITT* case is distinguishable from this case. First, the *ITT* case did not involve a statute of limitations issue. Second, the question in the *ITT* case was whether there had been a "continuing failure or neglect to obey" a Federal Trade Commission order within the meaning of the statute at issue. *Id*. at 230 (internal citation omitted). In this case, there is not similar language regarding a "continuing failure or neglect to obey." Plaintiff attempts to use the *ITT* case to bolster its position, but the case is dissimilar to this case.

To support its position that the alleged Clean Air Act violations are ongoing and not barred by the five year statute of limitations, Plaintiff relies heavily on *United States v. Marine Shale Processors*, 81 F.3d 1329 (5th Cir.1996), and *Nat'l Parks*

11

*Conservation Ass'n, Inc. v. Tennessee Valley Authority*, 480 F.3d 410 (6th Cir. 2007), because in both cases, the courts found there were ongoing violations. Both *Marine Shale* and *Nat'l Parks* are distinguishable from this case. In *Marine Shale*, the defendants argue, and the Fifth Circuit agrees, that the Louisiana regulation, unlike the Texas regulation at issue in this case, prohibited operation in addition to construction and modification of a facility without obtaining a Prevention of Significant Deterioration permit. *Marine Shale,* 81 F.3d at 1357-58.

Similarly, in *Nat'l Parks,* the Tennessee state implementation plan that administers the Clean Air Act's Prevention of Significant Deterioration program in Tennessee specifically provided for the scenario "where a source or modification was constructed without first obtaining a construction permit," which the Sixth Circuit said established an ongoing obligation to obtain a construction permit, even after construction was complete. *Nat'l Parks,* 480 F.3d at 419 (citing Tenn. Comp. R. & Regs. § 1200-3-9-.01(1)(e)). The Texas regulation at issue in this case does not specify actions to take if construction or modification occurs without a Prevention of Significant Deterioration permit, so unlike the language in *Nat'l Parks,* the regulation does not create an ongoing violation when operation without a pre-construction Prevention of Significant Deterioration permit begins.

Because the Clean Air Act does not have a statute of limitations, claims 1-3, 5, and 6 are subject to the general five year statute of limitations under 28 U.S.C. § 2462. *See Nat'l Parks*, 502 F.3d at 1322. Plaintiff had a "complete and present

12

cause of action" under 28 U.S.C. § 7475(a) on each of the dates when modification began at Luminant and Big Brown, so Plaintiff's claims first accrued on the modification start dates. *See Gabelli*, 133 S. Ct. at 1220; *see Nat'l Parks*, 502 F.3d at 1322.

The Court finds Plaintiff's argument unpersuasive and agrees with Defendants and the other circuit courts that have found violations of Clean Air Act preconstruction requirements are not ongoing. *See Nat'l Parks*, 502 F.3d at 1322*; see also Otter Tail Power Co.,* 615 F.3d at 1015; *Midwest Generation, LLC*, 720 F.3d at 644; *Homer*, 727 F.3d at 284-85. There is nothing in the Clean Air Act that indicates the violations are ongoing, and the violations were complete when modification began without a Prevention of Significant Deterioration permit. *Homer*, 727 F.3d at 284-85.

Plaintiff's Prevention of Significant Deterioration claims accrued on the following dates: (1) Claim 1 on March 4, 2006; (2) Claim 2 on February 16, 2007; (3) Claim 3 on February 26, 2005; (4) Claim 4 on March 1, 2009; (5) Claim 5 on February 10, 2008; and (6) Claim 6 on October 15, 2005. Because claims 1-3, 5, and 6 accrued more than five years before this lawsuit was filed on August 16, 2013 and because the violations are not ongoing, claims 1-3, 5, and 6 are barred by the statute of limitations. *See Nat'l Parks,* 502 F.3d at 1322*; see also Otter Tail Power Co.,* 615 F.3d at 1015; *Midwest Generation, LLC*, 720 F.3d at 644.

As to claim 5, the first paragraph of the tolling agreement establishes that it applies to the alleged violations "set forth in the July 13, 2013 Notice and Finding of Violations issued by EPA to Luminant." Tolling Agreement, Doc. No. 49, page 13. Plaintiff asserted in its brief before the Fifth Circuit that the July 2013 Amended Notice of Violation superseded the July 2012 Notice of Violation. Because the tolling agreement specifies that it applies to the alleged violations in the July 2012 Notice of Violation and Plaintiff sued on the claims in the July 2013 Amended Notice of Violation, not the July 2012 Notice of Violation, the tolling agreement is not in effect as to the alleged violations in the July 2013 Notice of Violation and the claims in this suit. Because this suit was filed more than five years after modification commenced, claim 5 was not timely filed.

The Court agrees with Defendants' arguments regarding injunctive relief and finds that Plaintiff's claims for injunctive relief are barred. *See United Transp. Union*, 586 F.2d at 523-24; *Nat'l Parks*, 502 F.3d at 1326. First, because Plaintiff's legal claims are barred by the statute of limitations, its claims for equitable relief are also barred under the concurrent remedies doctrine. *See United Transp. Union*, 586 F.2d at 523-24; *Nat'l Parks*, 502 F.3d at 1326. Second, district court jurisdiction over Clean Air Act claims does not extend to injunctive relief. *See Homer*, 727 F.3d at 293; *Midwest Generation, LLC*, 720 F.3d at 648. Because Congress did not provide for injunctive relief for past violations in the Clean Air Act but did provide a remedy for Prevention of Significant Deterioration violations before construction or

modification, the Court assumes Congress intended not to provide relief for past violations. *Homer*, 727 F.3d at 299; s*ee Marshall v. Gibson's Prods. Inc. of Plano*, 584 F.2d 668, 675-76 (5th Cir.). The Court "should not expand the coverage of the statute to subsume other remedies." *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974).

### B. Plaintiff's Title V of the Clean Air Act Claims

Defendants argue that Plaintiff's Title V claims, claims 7 and 8, should be dismissed for failure to state a claim. Plaintiff argues that Defendants' challenge is based on a misreading of the law.

#### 1. Title V Law

Title V of the Clean Air Act requires a major source of emissions to obtain an operating permit in order to operate but "generally does not impose any substantive pollution-control requirements." *Util. Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2435-36 (2014). Title V permits consolidate all of the Clean Air Act's requirements applicable to a facility into a single document. *Id*. at 2436; *Pub. Citizen, Inc. v. EPA*, 343 F.3d 449, 453 (5th Cir. 2003). The consolidated Title V operating permit "assure[s] compliance with all emission limitations and other substantive Clean Air Act requirements that apply to the source." *Envtl. Integrity Project v. EPA*, 425 F.3d 992, 993 (D.C. Cir. 2005).

Similar to the Prevention of Significant Deterioration program, Title V's operating permit program is a required part of the state implementation plans.

15

*Homer*, 727 F.3d at 280-81. Texas has implemented a Title V program, which has been approved by the EPA. 66 Fed. Reg. 63318-01 (Dec. 6, 2001); *Pub. Citizen, Inc.*, 343 F.3d at 455. Because Texas' Title V program has been approved, it is federally enforceable. S*ee Louisiana Envtl. Action Network*, 382 F.3d at 579.

The Clean Air Act does not authorize a collateral attack on a facially valid, but allegedly improper, state permit. *See CleanCOALition*, 536 F.3d at 477-78; *Homer*, 727 F.3d at 298; *16 Front St. LLC v. Mississippi Silicon, LLC,* No. 1:14-CV-00183-DMB, 2015 WL 4665223, at *11 (N.D. Miss. July 30, 2015). Congress did not provide for a "civil cause of action for submitting incomplete applications or operating under a validly issued but incomplete permit." *Homer*, 727 F.3d at 298. The plain text of Title V accounts for two ways in which Title V can be violated: (1) operating without a Title V permit and (2) violating the terms of a Title V permit while operating a source. *Id*. The text does not include operating with a facially valid but inadequate Title V permit as a violation nor is submitting an incomplete application unlawful. *Id*. The plaintiff in an enforcement case is limited to challenging whether or not the permit holder complied with the terms of the permit. *See id*.

### 2. Plaintiff's Title V Claims Fail to State a Claim

In claims 7 and 8, Plaintiff alleges that Defendants "failed to secure significant amendments to its Title V permit . . . failed to submit an accurate and complete Title V permit application . . . failed to accurately certify compliance with such

requirements . . . failed to include a compliance plan . . . and failed to include other specific information." Plaintiff's Complaint, Doc. No. 2, pages 31-33. Defendants argue these claims should be dismissed because they fail to state a claim.

Defendants argue that the Clean Air Act does not make actionable in an enforcement suit the failure to amend a Title V permit or the submission of an incomplete permit application. Defendants rely on *CleanCOALition v. TXU Power*, 536 F.3d 469 (5th Cir. 2008), to assert that filing an incomplete Prevention of Significant Deterioration permit does not mean they are violating a preconstruction requirement, emission standard, or limitation under the Clean Air Act. Defendants also assert that Plaintiff does not allege any violations of the terms of their duly issued Title V permits, rather Plaintiff alleges Defendants' permits are not "proper or adequate." Plaintiff's Complaint, Doc. No. 2, pages 32-33. Defendants rely on *United States v. EME Homer City Generation*, 727 F.3d 274 (3rd Cir. 2013), to establish that the Clean Air Act does not provide for a claim for operating under a facially valid, but allegedly improper Title V permit. Defendants argue that because the Clean Air Act does not provide for such a claim, claims 7 and 8 fail to state a claim and should be dismissed.

Plaintiff argues that under the Clean Air Act Defendants are required to obtain Title V operating permits that contain all of the Clean Air Act's applicable requirements, including the obligation to secure Prevention of Significant Deterioration permits and comply with Prevention of Significant Deterioration

requirements.  Plaintiff contends that Defendants are operating their plants under Title V permits that do not include any Prevention of Significant Deterioration requirements and that the Clean Air Act authorizes Plaintiff to bring an action, vesting jurisdiction with the Court.  Plaintiff argues that *CleanCOALition,* 536 F.3d 469 (5th Cir. 2008), is inapposite to the claims in this case because in that case, a citizen group wished to challenge a preconstruction permit before it was issued, and in this case, Plaintiff is trying to enforce ongoing Title V violations.  Plaintiff asserts that unlike the court in *Homer City,* 727 F.3d 274 (3rd Cir. 2013), other courts have read the Clean Air Act to give the EPA broad authority to enforce any Title V violation.

The Court finds that claims 7 and 8 should be dismissed for failure to state a claim.  Plaintiff asserts that it is "undisputed that Luminant is operating the Martin Lake and Big Brown plants under Title V permits that do not include any [Prevention of Significant Deterioration] requirements."  Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss, page 29.  Plaintiff concedes that Defendants have obtained a Title V permit for operation, but challenges the validity of the Title V permit because it fails to include any Prevention of Significant Deterioration requirements and Defendants have failed to amend it.  Failure to amend a Title V permit or the submission of an incomplete permit application is not actionable in an enforcement suit under the Clean Air Act.  *Homer*, 727 F.3d at 299 ("nor does Title V make submitting an incomplete permit application unlawful").

The Fifth Circuit decided in *CleanCOALition* that the Clean Air Act does not authorize preconstruction citizen suits against facilities that have obtained or are in the process of obtaining a Prevention of Significant Deterioration permit. *CleanCOALition*, 536 F.3d at 478-79. Although the court in *CleanCOALition* examined filing an incomplete Prevention of Significant Deterioration permit application, and not a Title V operating permit, the same analysis applies here. "Presumably, an entity can file as many incomplete permit applications as it so chooses, but that does not mean in doing so, it is violating a preconstruction requirement or an emission standard or limitation." *CleanCOALition*, 536 F.3d at 478. The court found that the mere filing of an incomplete permit application is not a violation under the Clean Air Act, and because there was no claim, the court lacked subject matter jurisdiction. *Id*. Similarly, the Court finds that because filing an incomplete Title V permit application is not a violation under the Clean Air Act, Plaintiff has failed to state a claim. *See id*. Because claims 7 and 8 fail to state a claim, they are dismissed. *See id*.; *Homer*, 727 F.3d at 299.

**C. Notice Violation**

Defendants argue that claims 1 – 8 should be dismissed because the EPA failed to provide proper pre-suit notice under 42 U.S.C. § 7413(a)(1). Plaintiff argues that it did provide proper notice and that Defendants are trying to expand the reading of the statute. The Court declines to address the notice issue.

IV.     Conclusion

The Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss.  Because claims 1-3, 5, and 6 are barred by the statute of limitations and claims 7 and 8 fail to state a claim, claims 1-3 and 5-8 are **dismissed with prejudice**.  Claims 4 and 9 remain before the Court.

**SO ORDERED**.

Signed August 21st, 2015.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE